567 P.2d 3

**Donald R. JONES, Claimant-Appellant,**

v.

**MORRISON–KNUDSEN CO., INC., Employer, and Argonaut Northwest Insurance Company, Surety, Defendants-Respondents.**

**No. 12192.**

Supreme Court of Idaho.

June 29, 1977.

Nels T. Sahl, of Sahl & Risley, St. Anthony, for claimant-appellant.

John W. Barrett, of Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-respondents.

BAKES, Justice.

This appeal involves a maze of limitations provisions under the Workmen's Compensation Act governing the compensability of claims and when claims for additional compensation may be filed. The Industrial Commission dismissed claimant appellant Donald R. Jones' application for hearing, ruling that his workman's compensation claim is barred under four different statutory limitations provisions.

Jones was employed as a construction worker by the Morrison Knudsen Company, Inc., in the construction of the ill-fated Teton Dam for various periods from September, 1972, through November, 1974. From September 28, 1972, through December 1, 1972, he was employed in and around wet cement. On November 10, 1972, he experienced a skin burn, attributed to the cement, which was treated by the first aid station at the damsite. Jones did not work for Morrison Knudsen from December through February, but went back to work at the damsite, again around wet cement, on February 27, 1973, this period lasting through June 8, 1973. On March 15, 1973, he reported to the first aid station with a more severe flare-up of the skin burn from cement. Over the next several weeks, Jones was treated for the cement burns at the first aid station, but his condition worsened and finally he was referred to a physician and he was also transferred away from cement work. The physician's report filed with the Industrial Commission on April 25, 1973, describes Jones' affliction as allergic contact dermatitis, and this was subsequently attributed to chromate in the cement.

Jones gave a written Notice of Injury and Claim For Benefits to his employer on April 4, 1973 (the Notice appears to have actually been made out by the employer), which was filed with the Industrial Commission on April 19, 1973. Thereafter the employer's surety, Argonaut Insurance Co., paid his medical bills on May 2, 1973, and August 20, 1973. Jones continued receiving medical treatment through 1973 but the dermatitis never completely cleared up.

In the latter part of 1973, Jones worked for other employers where he was also exposed to wet cement, and in late 1973, his dermatitis flared up and became progressively worse through early 1974. He continued receiving medical treatment and referred medical bills to Argonaut Insurance Co. The surety did not pay these subsequent medical expenses. Jones went back to work for Morrison Knudsen in March, 1974, although he did not work around wet cement. A claims investigator for Argonaut interviewed Jones in May, 1974, but it was not until September 13, 1974, that the surety informed Jones by letter that it did not consider his current dermatitis condition attributable to his March, 1973, flare-up. Upon receipt of this letter, Jones went to an attorney and on November 27, 1974, filed an application for a hearing, claiming additional compensation.

In its answer to Jones' application the surety asserted that the claim was barred under three different statutory limitations provisions: (1) I.C. § 72–448(1)[1] because

---

1. "72–448. Notice of Contraction of disease and claim for compensation.—(1) Except in cases of silicosis for which notice of contraction and claim for compensation may be given at any time within the four (4) year limitation provided in section 72–439, unless written no-

Jones failed to filed his claim for disability within one year after the disablement; (2) I.C. § 72–448(3) [2] because this claim for further compensation was made more than one year after the last payment of compensation by the surety; and (3) I.C. § 72–439 [3] because Jones' disablement did not result within one year after his last injurious exposure to cement. The surety subsequently asserted a fourth limitations defense based on the last paragraph of I.C. § 72–439, arguing that Jones had not been exposed to the hazard of dermatitis for a period of sixty days while employed by Morrison Knudsen.

A hearing was held before the Industrial Commission on February 6, 1975. A dermatologist, Dr. George Brown, testified on Jones' behalf. Jones first contacted Dr. Brown on February 11, 1974, when the dermatitis condition covered his entire body. Dr. Brown's diagnosis was that Jones had allergic contact dermatitis and auto-excema caused by his allergy to chromates which are found in cement. Brown explained that this allergy develops slowly and that the sensitivity to chromates worsens with repeated exposures to the substance. He declared that once a person becomes allergic to chromates, the allergy is permanent and the only effective cure is avoidance of exposure to chromates. He also stated that chromate is found in many other substances, including paints, gasoline, and bleaching agents. Dr. Brown identified the initial cement burn of November, 1972, as Jones' first allergic reaction to chromate and the March, 1973, flare-up as the onset of chromate contact dermatitis.

In his testimony, claimant Jones stated that he had been working for Morrison Knudsen for about five weeks when the first reaction occurred in November, 1972, and the condition has not since entirely cleared up. He had never worked around wet cement prior to his employment in 1972 for Morrison Knudsen. He also testified that he had never had any previous skin disorders.

In its findings of fact and conclusions of law, the Industrial Commission ruled that Jones' application for hearing for additional compensation was barred under the statutory provisions as asserted by the surety in its answer. The Commission ruled: (1) the claim was barred under I.C. § 72–448(3) because more than one year had passed between the last payment to Jones by Argonaut on August 20, 1973, and the filing of his claim for further compensation on November 25, 1974; (2) the claim was barred under I.C. § 72–448(1) because no claim for disability was made within five months after his employment ceased and no claim for disability was made within one year after

tice of the manifestation of an occupational disease shall be given by the employee to the employer within sixty (60) days after the first manifestation thereof, and within five (5) months after the employment has ceased in which it is claimed the disease was contracted, and, in case of death, unless written notice of such death be given within ninety (90) days after the occurrence and unless claim for disability or death shall be made within one (1) year after the disablement or death respectively, all rights to compensation for disability or death from injury due to an occupational disease shall be forever barred."

2. "72–448. Notice of contraction of disease and claim for compensation.—

.    .    .    .

"(3) When compensation payments have been made and discontinued and further compensation is claimed, the claim for such further compensation shall be made within one (1) year after the last payment."

3. "72–439. Limitations.—An employer shall not be liable for any compensation for an occupational disease unless such disease is actually incurred in his employment and, unless disablement or death results within (4) years in case of silicosis, or one (1) year in case of any other occupational disease, after the last injurious exposure to such disease in such employment, or, in case of death, unless death follows continuous disability from such disease, commencing within the period above limited for which compensation has been paid or awarded or claim made as provided in this chapter, and results within four (4) years after the last injurious exposure.

"An employer shall not be liable for any compensation for a non-acute occupational disease unless the employee was exposed to the hazard of such disease for a period of sixty (60) days for the same employer."

disablement; (3) the claim was barred under I.C. § 72–439 because the disablement did not result within one year from the date of the last injurious exposure to chromates in cement; and (4) the claim was barred under I.C. § 72–439 because the claimant had not proved that he was exposed to the hazards of the disease for sixty days prior to the two manifestations of the dermatitis on November 10, 1972, and March 16, 1973.

■■■ *I.C. § 72–439* : We begin with this section because it defines the compensability of claims. This statute provides that an employer shall not be liable for any compensation unless disablement results within one year after the last injurious exposure to such disease in its employment. Disablement is defined for purposes of the Occupational Diseases Act as:

> "[T]he event of an employee's becoming actually and totally incapacitated because of an occupational disease from performing his work in the last occupation in which injuriously exposed to the hazards of such disease, . . ." I.C. 72–102(17)(c).

Read together with I.C. § 72–439, this means that a claimant can receive no compensation for an occupational disease unless he is "totally incapacitated . . . from performing his work in the last occupation in which [he was] injuriously exposed to the hazards of such disease . . . ." While it is evident from the record that the claimant can no longer work in any occupation which exposes him to chromates, the Industrial Commission did not find when the claimant was last exposed, nor did it find a date of disablement. Without these findings, we cannot determine whether his claim is compensable under I.C. § 72–439, and therefore we must remand this case to the Industrial Commission for findings on these issues.

■ I.C. § 72–439 also conditions the compensability of a claim resulting from a non-acute occupational disease on the claimant's exposure to the hazards of the disease for a period of sixty days while working for the employer. The Industrial Commission appears to have interpreted this provision as requiring that the claimant prove that he had been exposed to the hazards of the disease for sixty days prior to the first manifestation of the disease (Conclusion of Law IV, Clk.Tr., p. 35). This was error. Not only is there nothing in the language of this statute requiring that the sixty days of exposure must be prior to the first manifestation of the disease, nor does it require that the exposure be continuous, but such a reading of this provision appears to be contrary to the typical behavior of this occupational disease. The dermatologist who testified before the Industrial Commission, Dr. Brown, stated that dermatitis starts as a slowly developing hypersensitivity to a substance after initial exposures, intensifying after repeated exposures to the substance. The first "manifestation" of the disease, therefore, might typically not be a full blown flare-up but a minor irritation the cause of which might not be known to the unsuspecting victim and could frequently occur in less than sixty days. Further, there is no reason to require as the Industrial Commission did that the claimant's exposure to the hazardous substance be continuous. The statute only requires sixty days of exposure to the hazardous conditions while in Morrison Knudsen's employment, and therefore in computing the sixty day requirement the Industrial Commission must count Jones' exposures to cement occurring during both the September-December, 1972, period and from February, 1973, to the time he was transferred away from cement work. Because of the lack of evidence to support the Commission's finding in this regard, and the erroneous interpretation of the statute upon which it was based, the finding is set aside and the issue is remanded to the Commission for further proceedings.

■■ *I.C. § 72–448(1)* : This subsection governs the time periods when a notice of manifestation of an occupational disease must be filed by an employee with the employer, and when a claim for disability must be filed with the Industrial Commission. Notice of a manifestation of an occupational disease must be given to the em-

ployer within sixty days after the first manifestation of the disease and within five months after the employment has ceased. The Industrial Commission ruled that the claim was barred because Jones did not file a claim for disability within five months after his employment with Morrison Knudsen ceased. This was error. First, the portion of the statute setting out the sixty day limitation does not require the filing of a claim for disability benefits, but merely requires that an employee give written notice to his employer, which was done in this case on April 4, 1973. Secondly, we interpret the five month provision to apply only to instances when the first manifestation of the occupational disease occurs after the employee has left his employment. When the first manifestation of the disease occurs prior to his leaving the employment and the employee has already given his notice to the employer, there is no need for him to file a second notice within five months after quitting. One notice under the statute is sufficient. Thirdly, the sixty day provision governs only the initial notice of manifestation of an occupational disease and it does not require a notice to the employer upon each manifestation of the disease.[4]

█ This subsection also provides that "unless claim for disability or death shall be made within one (1) year after the disablement or death respectively, all rights to compensation for disability or death from injury due to an occupational disease shall be forever barred." In its Conclusion of Law II, the Industrial Commission ruled that the claim was barred under this provision because it was not filed within one year after the disablement. However, as we have earlier indicated, the commission made no finding of when disablement, if any, occurred. However, in any event, we are of the opinion that this provision is inapplicable to the facts of this case.

Whether or not Jones' initial notice of injury and claim for compensation filed on April 4, 1973, is considered a claim for disability sufficient to satisfy the one year requirement, cf. *Howard v. FMC Corp.*, 98 Idaho 465, 567 P.2d 10 (1977), the fact is that the employer's surety paid his initial claims in May, 1973, and August, 1973, and filed proofs of such award with the Industrial Commission. Under those circumstances it is our conclusion that that provision in I.C. § 72–448(1) which requires a claim for disability to be filed within one year after the disablement is no longer applicable, in view of the language contained in I.C. § 72–448(3), and § 72–706(2), both of which provide that when compensation has been paid and then discontinued the time frame within which the claimant must take action commences after the last payment of compensation.[5] Here the surety initially paid compensation to the claimant in the form of medical expenses, the last payment of which was on August 20, 1973, and under both §§ 72–448(3) and 72–706(2), the time within which the claimant had to take additional action commenced on that date. However, there is a conflict between I.C. § 72–448(3) and I.C. § 72–706(2) concerning how soon that action must be taken by the claimant. We must now analyze those two sections to see which controls.

█ *I.C. § 72–448(3)*: This subsection imposes a limitations period on applications for further compensation, barring claims for additional compensation more than one year after the last payment of compensation by the employer. It is undisputed that the last compensation received by Jones from the surety was on August 20, 1973, and that the claim for further compensation was filed on November 27, 1974. Therefore, this claim is clearly barred by the limitations period in this subsection. How-

---

4. Jones gave his written Notice of Injury and Claim for Benefits on April 4, 1973, identifying the date of initial manifestation of the dermatitis as March 16, 1973. At no time in these proceedings has the surety contended that this notice was not within sixty days of the first manifestation, as provided by I.C. § 72–448(1).

5. We recognize that the payment of a claimant's initial medical bills by the employer's surety may not be an admission of liability for all compensation benefits claimed thereafter. But it will affect the question of which limitations period applies under I.C. §§ 72–448 and 72–706.

ever, I.C. § 72–706(2) [6] also contains a limitations period for claims for additional compensation, providing that a claimant has five years from the date of first manifestation of the occupational disease within which to make and file an application for a hearing for further compensation. Since this period referring to the date of first manifestation of the disease dates from either November, 1972, or March, 1973, at the earliest, the claim would not be barred under I.C. § 72–706(2). Therefore we are confronted with statutory provisions that are in direct conflict. The Industrial Commission applied I.C. § 72–448(3) and ruled that the claim was barred, but made no reference to this statute's conflict with I.C. § 72–706(2). We must determine which of these provisions will control.[7]

The surety acknowledges that these statutes are in direct conflict but argues that I.C. § 72–448(3) should control because first, it is a specific statute which is part of the Occupational Diseases Act while § 72–706(2) is merely a general limitations provision; and secondly, if we applied the limitations provision in I.C. § 72–706(2) the limitations scheme of the Occupational Diseases Act would be destroyed. Regarding this latter argument, we are not convinced that application of the five year limitations period contained in I.C. § 72–706(2) would destroy the limitations scheme in the Occupational Diseases Act, which already suffers from over-complexity. Also, while it is arguable that the limitations period which is contained in the Occupational Diseases Act should control over a general limitations period, the legislative history of these statutes convinces us that I.C. § 72–706(2) should be controlling.

I.C. § 72–448(3) was a part of the original Occupational Diseases Act of 1939 and was unchanged except for its citation by the 1972 recodification of the Workmen's Compensation Code. On the other hand, I.C. § 72–706(2) was amended by the legislature in the 1972 codification, specifically extending its applicability to occupational diseases. This statute now reads:

The claimant shall have five (5) years from the date of the accident causing the injury *or date of first manifestation of an occupational disease, within which to make and file with the commission an application requesting a hearing for further compensation and award."* (Emphasis added).

The emphasized language above was added by the 1972 amendments.

In *Beard v. Lucky Friday Silver-Lead Mines,* 67 Idaho 135, 173 P.2d 76 (1946), this Court stated:

"[I]n construing any section or subsection, which is a part of the Workmen's Compensation Law, the latest expression of the legislature should prevail." 67 Idaho at 138, 173 P.2d at 78.

We have also frequently stated that the Workmen's Compensation Act is to be construed liberally in favor of claimants. *In re Haynes,* 95 Idaho 492, 511 P.2d 309 (1973); *Burch v. Potlatch Forests, Inc.,* 82 Idaho 323, 353 P.2d 1076 (1960). Therefore, we conclude that the I.C. § 72–706(2) five year limitations period which runs from the first manifestation of an occupational disease must prevail over the I.C. § 72–448(3) one year limitations period which runs from the last payment of compensation.

■ *Conclusion* : On remand, the Industrial Commission must make findings concerning the date of the claimant's last expo-

---

6. "72–706. Limitation on time on application for hearing.—. . .

"(2) When compensation discontinued. When payments of compensation have been made and thereafter discontinued, the claimant shall have five (5) years from the date of the accident causing the injury or date of first manifestation of an occupational disease, within which to make and file with the commission an application requesting a hearing for further compensation and award.

7. These conflicting statutes are not unlike those which we found in the case of *State v. Boyenger,* 95 Idaho 396, 402, 509 P.2d 1317 (1973), in which the Court observed that:

"The continued enactment of overlapping . . . legislation . . . like too many layers of old wallpaper, makes the task of the artisans of the law extremely difficult . . . ."

sure to chromates while working for Morrison Knudsen, and the date of disablement, if any, as we have indicated in this opinion. It must also recompute the sixty day exposure rule applying the principles we have set out herein. If the Commission finds that the claimant was not disabled within the definition of I.C. § 72–102(17)(c), or that he was disabled but such disablement resulted more than one year after his last injurious exposure to the disease, I.C. § 72–439, or that he had not been exposed to the hazards of chromates for sixty days while working for Morrison Knudsen, I.C. § 72–439, then his claim is not compensable.

Reversed and remanded. Costs to appellant.

McFADDEN, C. J., and DONALDSON, SHEPARD and BISTLINE, JJ., concur.