778 P.2d 797

Glen PECKHAM, Claimant,

v.

PRODUCER'S LUMBER COMPANY,
Employer, Defendant–Appellant,

and

State Insurance Fund, Surety,
Defendant–Respondent,

and

Alaska Pacific Assurance Co., Argonaut–
Northwest Insurance Company, Mis-
sion Insurance Company, and Lumber-
men's Underwriters Alliance Insurance
Company, Defendants–Appellants.

Nos. 17173–17176.

Supreme Court of Idaho.

Aug. 11, 1989.

Imhoff & Lynch, Boise, for appellant, Alaska Pacific Assur. Thomas P. Baskin, III, argued.

Hawley Troxell Ennis & Hawley, Boise, for appellant, Lumbermen's. Karen L. Lansing, argued.

Moffatt Thomas Barrett Rock & Field, Boise, for appellant, Argonaut. Michael G. McPeek, argued.

Quane, Smith, Howard & Hull, Boise, for employer-appellant, Producer's Lumber and appellant, Mission Insurance. Alan K. Hull, appeared.

Elam, Burke & Boyd, Boise, for respondent, State Ins. Fund. Robert M. Tyler, Jr., argued.

HUNTLEY, Justice.[*]

This interlocutory appeal raises an issue of first impression as to whether the last injurious exposure rule is mandated by I.C. § 72–437 and § 72–439 for the purpose of determining which of an employer's successive insurance carriers should be held liable for a worker's compensation claim, and in the alternative, if the last injurious exposure rule is not statutorily mandated, whether it should be judicially adopted in such cases.

We hold that neither the last injurious exposure rule nor its alternative, the apportionment rule, are explicitly or implicitly mandated by Idaho statute and that there are compelling reasons for judicially adopting the last injurious exposure rule.

### THE FACTS

The Industrial Commission has not made any findings of fact in this case. For the purposes of both this appeal and adjudication of the motions to dismiss before the Commission, all parties have treated as undisputed the facts established by the pleadings, the claimant's deposition, the Commission's records regarding the periods of coverage, and pertinent medical records which were made part of the Clerk's Records.

---

[*] This appeal was prepared by HUNTLEY, J. and voted on by the Court prior to his resignation on August 7, 1989.

Glen Peckham worked for Producer's Lumber Company from July 10, 1954 until April 7, 1986. Between 1954 and September 1970, Peckham worked on the planing crew, pulled on the "green chain," hauled wood chips in a dump truck, drove a flatbed truck to deliver building products to customers, and drove truckloads of lumber to the site of a plant being constructed by Producer's to house its operations after it closed its retail yard in Boise. Between September 1970 and his last day of work on April 7, 1986, Peckham operated a log loader. He testified that his working environment during the years he worked as a log loader was "dusty."

The first time Peckham recalled having any problems with his lungs, aside from chest colds, was in 1982. He then consulted a Dr. Kendall after developing a feeling of soreness in his lungs when he breathed. As a result of this visit, Peckham received respiratory therapy and medication during May and June of 1982. Dr. Kendall did not disclose the cause of his symptoms; nor did he advise Peckham to avoid any activities.

Peckham continued to have lung problems from 1982 through 1986. His sporadic lung problems became more persistent sometime around 1983. He started getting tired more easily and his voice became hoarse. In the fall of 1985 his symptoms took a particular turn for the worse. He was constantly tired. He finally decided to see Dr. Quickstad, his family physician, in February 1986 because of his constant fatigue and because he was also experiencing soreness in his lungs on a daily basis. Dr. Quickstad referred Peckham to Dr. Torrington, a pulmonary specialist. After examining Peckham on a few different occasions, Dr. Torrington arranged for him to be admitted to St. Luke's Regional Medical Center on April 8, 1986, for a lung biopsy.

On that date, the day after Mr. Peckham's last day of employment with Producer's, Dr. Orme conducted an open lung biopsy which revealed severe interstitial fibrosis and marked emphysema of the lung.

Peckham testified that prior to going to St. Luke's for the lung biopsy, he had not missed any work because of his lung problems. He stated that Dr. Torrington was the first doctor to ever discuss the nature and cause of his pulmonary problems. Dr. Torrington told him that his problems were caused from breathing wood dust, that he should avoid exposure to wood dust, and that continuing his employment with Producer's would pose further risk to his health.

After reviewing the biopsy results, Dr. Torrington diagnosed Peckham as having pulmonary fibrosis. He met with Peckham on April 16, 1986, to discuss the biopsy results and Peckham's prognosis. He told Peckham that "there is a significant likelihood that the present scarring is job related." In his notes for April 16, 1986, Dr. Torrington wrote that Peckham "must find other work."

The following carriers provided Producer's Lumber Company with worker's compensation coverage from 1975 to the present:

Argonaut Northwest Insurance Company
April 1, 1975 to April 1, 1976;
Alaska Pacific Assurance Company
October 1, 1976 to December 18, 1977;
Argonaut Northwest Insurance Company
October 1, 1977 to October 1, 1978;
Alaska Pacific Assurance Company
October 1, 1978 to October 1, 1981;
Mission Insurance Company
October 1, 1981 to October 1, 1982;
Argonaut Northwest Insurance Company
October 1, 1982 to October 1, 1984;
Lumbermen's Underwriting Alliance
October 1, 1984 to October 1, 1985;
State Insurance Fund (S.I.F.)
October 1, 1985 to present.

Mr. Peckham applied for a hearing before the Idaho Industrial Commission on or about August 1, 1986. He claimed he became disabled from a pulmonary disease allegedly contracted and incurred from work related exposure to wood dust. He named Producer's Lumber Company as the employer/defendant and S.I.F. as the worker's compensation surety/defendant. S.I.F. moved to have the other four insurance carriers joined as defendants, which motion was granted.

On April 6, 1987, the Commission entered an order denying Argonaut's, Mission's and Alaska Pacific's motion to dismiss them as defendants on the grounds that I.C. § 72–439, which the movants had cited in support of their motion, does not apply to the question of which of the multiple sureties should ultimately be liable to pay the benefits.

On April 27, 1987, Argonaut, Alaska Pacific and Mission joined in a motion for reconsideration in which they argued that I.C. § 72–439 represents a codification of the so-called "last injurious exposure rule." Lumbermen's moved to dismiss arguing that while I.C. § 72–439 is not a codification of the last injurious exposure rule, it should be judicially adopted. In response to the motion brought by Argonaut, Alaska Pacific and Mission, S.I.F. argued that the Commission had correctly ruled the first time. On May 21, 1987, Alaska Pacific filed an amendment to its motion to dismiss and a brief in response to Lumbermen's motion in which Alaska Pacific adopted Lumbermen's position as an alternative ground to its motion for dismissal. On June 2, 1987, the Commission denied the motion brought by Alaska Pacific, Argonaut and Mission and the motion brought by Lumbermen's.

On July 20, 1987, the Industrial Commission ordered S.I.F. to pay Peckham the worker's compensation benefits "to which he is or may become entitled pending a final determination of coverage liability." On September 22, 1987, the Commission entered an order of clarification ordering S.I.F. to pay Peckham all worker's compensation benefits which he had accrued as of that date and all future benefits to accrue during the appellate process. On October 31, 1987, S.I.F. filed a motion and a brief for reconsideration of the Commission's order arguing that under I.C. § 72–313, S.I.F. should not have to pay Peckham all the past due worker's compensation benefits to which he had become entitled. The Industrial Commission never has issued a ruling on S.I.F.'s motion for reconsideration. S.I.F. has continued to provide Peckham with temporary disability benefits.

This Court granted Argonaut, Alaska Pacific, Mission and Lumbermen's permission to appeal interlocutorily from the Commission's orders denying the respective motions to dismiss. The court further ordered a consolidation of all appeals.

## I.

### Statutory Background and Position Urged by the Parties

The appellants claim that I.C. § 72–437 and § 72–439 mandate the last injurious exposure rule for determining which surety is liable in situations where the employer had successive sureties.

Idaho Code §§ 72–437 and 72–439 read as follows:

72–437. Occupational diseases—Right to compensation.—When an employee of an employer suffers an occupational disease and is thereby disabled from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease, or dies as a result of such disease, and the disease was due to the nature of an occupation or process in which he was employed within the period previous to his disablement as hereinafter limited, the employee, or, in case of his death, his dependents shall be entitled to compensation.

72–439. Limitations.—An employer shall not be liable for any compensation for an occupational disease unless such disease is actually incurred in his employment and, unless disablement or death results within four (4) years in case of silicosis, or one (1) year in case of any other occupational disease, after the last injurious exposure to such disease in such employment, or, in case of death, unless death follows continuous disability from such disease, commencing within the period above limited for which compensation has been paid or awarded or claim made as provided in this chapter, and results within four (4) years after the last injurious exposure.

An employer shall not be liable for any compensation for a non-acute occupational disease unless the employee was exposed to the hazard of such disease for a period of sixty (60) days for the same employer.

The appellants' argument relies on the statutory definitions of the terms "employer" and "disablement," the statutory requirements for disablement, and an inference as to the impact the requirements of disablement have on the disbursement of liability.

The appellants argue that under I.C. § 72–102(10), "sureties" are included in the definition of "employer." They further argue that the "event" or "disablement" as defined under I.C. § 72–102(17)(c) may be the doctor's instruction that the employee must discontinue the type of work which caused the occupational disease.[1]

The appellants cite I.C. § 72–437 for the point that workers cannot file valid claims until they are disabled. And they point to I.C. § 72–439 for the requirement that an employer cannot be held liable unless the alleged disablement occurs within one year of the last injurious exposure to the occupational disease causing element.

Finally, from these two definitions and two points of law, the appellants extrapolate the conclusion that any carrier which went off the employer's risk more than one year prior to the disablement of the worker's compensation claimant cannot be held liable for worker's compensation benefits. Though not elucidated, the reasoning for this conclusion seems to be that since a worker's compensation surety can only be held liable when the insured employer can be held liable and the employer cannot be held liable where the claimant's disablement occurs more than one year after the last injurious exposure, the insurance company cannot be held liable in such situations either. The appellants move from this conclusion to their ultimate point; that in worker's compensation cases where there are successive sureties, the last injurious exposure rule must be utilized to determine which surety is liable. Simply put, they argue that since neither employer nor surety can be held liable for a worker's compensation claim where disablement occurs more than one year subsequent to the last injurious exposure, the last injurious exposure rule is mandated in successive surety cases.

Expressing our opposing viewpoint, the State Insurance Fund argues that the statutes should be interpreted to require the apportionment of the risk between all sureties who were on the coverage during any period when the worker received exposure contributing to his ultimate disability.

We read the statutes to require an interpretation somewhat different than that of either party, but more closely aligned to that of appellant.

## II.

### Statutory Analysis

Based upon our interpretation of the statutes, we conclude that a surety is liable for compensation if:

(1) the surety insured the employer within one year prior to the date the employee suffered total incapacitation from an occupational disease other than silicosis;

(2) injurious exposure occurred during the employment of the employee by the employer and while the surety insured the employer; and

(3) the employee is totally incapacitated from performing the employee's work in the last occupation in which the employee was injuriously exposed to the hazards of the occupational disease that caused the employee's total incapacity.

I.C. § 72–437 (1973) provides that "an employee of an employer suffers an occupational disease and is thereby disabled from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease ... shall be entitled to compensation." I.C. § 72–439 (1973) limits the liability of an employer for disability compensation for an occupational disease other than silicosis to cases where the disease is actually incurred in the employee's employment and where disablement results within one year after the last injurious exposure to the disease in the employment. I.C. § 72–102(17)(c) (Supp. 1988) defines disablement as "the event of an employee's becoming actually and total-

---

1. Though never actually stated, this argument is   implicit in the appellants' claim.

ly incapacitated because of an occupational disease from performing his work in the last occupation in which injuriously exposed to the hazards of such disease." This Court has ruled that reading I.C. § 72–102(17)(c) together with I.C. § 72–439 "means that a claimant can receive no compensation for an occupational disease unless he is 'totally incapacitated ... from performing his work in the last occupation in which [he was] injuriously exposed to the hazards of such disease ...'" *Jones v. Morrison–Knudsen Co., Inc.*, 98 Idaho 458, 462, 567 P.2d 3, 7 (1977). Interpreting I.C. §§ 72–437, 72–102(17)(c) and 72–439 and following the principal established in *Jones* leads us to the conclusion that only the sureties which insured Producer's during the year before Peckham was totally incapacitated are potentially liable for compensation. Their actual liability will depend on factual findings by the Commission as to when injurious exposure occurred and when total incapacity occurred.

Under *Jones*, until Peckham became totally incapacitated, he was not entitled to compensation for his occupational disease. However, under I.C. § 72–437 liability is based on injurious exposure, not necessarily just the last injurious exposure. Whether a particular exposure was the last injurious exposure has significance only because of the limitation imposed by I.C. § 72–439. Under these statutes the last injurious exposure is not the only basis for liability. If there were more than one surety liable during the year defined in I.C. § 72–439, some form of apportionment would be necessary.

Reversed and remanded for reconsideration of the motions to dismiss in light of this opinion. Costs to appellants, no attorney fees awarded.

BAKES, C.J., and BISTLINE and JOHNSON, JJ., concur.

SHEPARD, J., sat but did not participate due to his untimely death.