784 P.2d 890

**Michael P. CAWLEY,**
**Claimant–Appellant–Cross–Respondent,**

v.

**IDAHO NUCLEAR CORPORATION, Employer, and Insurance Company of North America, Surety, Defendants–Respondents–Cross Appellants.**

No. 17514.

Supreme Court of Idaho.

Dec. 29, 1989.

Racine, Olson, Nye, Cooper & Budge, Pocatello, for appellant. John B. Ingelstrom argued.

Penland & Munther, Boise, for respondents. Paul S. Penland argued.

BISTLINE, Justice.

In this workers' compensation case, Michael Cawley seeks benefits for an alleged disability that resulted from exposure to radioactive substances during his employment at the Idaho National Engineering Laboratory (INEL). Cawley's application for a hearing was dismissed for failure to comply with the timeliness provision of I.C. § 72–448(2). We reverse and remand for a determination of whether Cawley is dis-

abled and if so, when the disability occurred.

Cawley was sixty-two years old at the time of the evidentiary hearing held in September 1986. He worked at INEL from 1955 to 1974, under a succession of employers.

Cawley voluntarily terminated his employment at INEL for personal reasons unrelated to his health. He moved to Colorado in 1974, and was employed by the National Oceanic and Atmospheric Administration until 1977. In 1977 he transferred to the Bureau of Standards where he was employed until 1985. Cawley testified that, with the exception of machining radioactive materials, his job duties as a machinist at INEL did not differ from his duties for his subsequent employers. He worked full-time as a machinist from 1974 until 1985.

In 1966 Cawley was exposed to a significant amount of radioactive material. Having passed through a storage area, he was informed by a health physicist that the area was contaminated. He was instructed to remove his clothing and take a shower. The health physicists discovered that Cawley had radioactive particles lodged in his nose, which the health physicist attempted to remove through the use of a small brush.

Cawley first became aware of a problem with his left lung in February of 1968. X-rays indicated a condition that was consistent with pleurisy or viral pneumonia. In 1968, Cawley was hospitalized repeatedly in order to remove fluid that had accumulated in his lungs. Later x-rays revealed pleural scarring in both lungs. Each of the doctors who examined Cawley from 1968 to 1974, advised that the problem was probably a viral infection.

In 1977, Cawley consulted Dr. William R. Berry who conducted a series of tests in order to determine the cause of Cawley's lung disease. Dr. Berry concluded that Cawley's x-rays were compatible with a diagnosis of his pleural disease being caused by radiation exposure. Cawley's notice of injury and claim for benefits was filed with the Industrial Commission on June 29, 1979.

Earlier, in the 1978 calendar year, an ill-advised action was filed by an attorney representing Cawley in the United States District Court for the District of Colorado against the trustees of Idaho Nuclear Corporation. The complaint alleged that Cawley was exposed to radioactive contamination while employed by Idaho Nuclear Corporation. It alleged that the permanent damage to Cawley's lungs was caused by the negligence of the corporation. The complaint recited that Cawley first became aware of the job-related nature of his injuries in 1977. That suit was, of course, dismissed for lack of personal jurisdiction over the defendant.

In the Industrial Commission proceedings the defendants moved to dismiss on the grounds that Cawley's claim was time-barred under the provisions of I.C. § 72–701 or, alternatively, I.C. § 72–448(2). Initially, the Commission denied defendants' motion to dismiss concluding that its decision on the motion would require a resolution of disputed issues of fact through an evidentiary hearing. In October of 1987 defendants renewed their motion to dismiss on the grounds that Cawley's claim was time-barred. By order dated March 30, 1988, Cawley's application for a hearing was dismissed as time-barred under the provisions of I.C. § 72–448(2). Cawley's appeal requires us to consider whether the Commission correctly applied the timeliness provisions of I.C. § 72–448(2).

Our workers' compensation code provides that, in addition to industrial injuries, an employee may receive compensation for suffering an occupational disease. I.C. § 72–437. One of the categories of disease that is specifically listed by the code is conditions resulting from exposure to radiation. I.C. § 72–438(6). The code specifies time limitations which govern the giving of notice to the employer and which limit the time within which a claim for compensation may be filed.

Idaho Code § 72–448(2) provides, in relevant part:

> [W]hen disablement or death is the result of exposure to radioactive properties of substances or sources of the ionizing radiation in any occupation involving direct contact therewith, handling thereof, or exposure thereto, or asbestosis or berylliosis and other unusual cases of occupational diseases, written notice may be given any time and a claim filed within one (1) year after the date upon which the employee first suffered incapacity, disability, or death from such exposure and knew or in the exercise of reasonable diligence should have known that the occupational disease was caused by his present or prior employment.

The statute clearly provides that a radiation-related occupational disease claim must be filed within a year of two events: (1) the employee must *first* suffer "incapacity, disability, or death," due to an occupational disease [1] and (2) the employee must have known or in the exercise of reasonable diligence should have known that the occupational disease was caused by his present or prior employment.

(Emphasis added.)

Thus, where Idaho Code § 72–448(2) refers to "incapacity, disability or death" reference is not made to a partial incapacity, but rather total incapacity. "Incapacity" does not refer to a partial incapacity, but rather to the total incapacity described in the statutory definition of disablement. *See Jones v. Morrison–Knudson Co. Inc.*, 98 Idaho 458, 462, 567 P.2d 3, 7 (1977) (a claimant can receive no compensation for an occupational disease unless he is totally incapacitated from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease).

---

1. A reading of the portions of the code governing occupational diseases leads to the conclusion that the disability referred to in § 72–448(2) is a total disability. The statutes consistently refer to "disablement" or death as conditions of compensable occupational diseases. *See* I.C. § 72–439,–448(2),–437. Idaho Code § 72–102(18)(c) [Effective until January 1, 1990], defines disablement:

   (c) 'Disablement,' except in the case of silicosis, means the event of an employee's becoming actually and *totally incapacitated* because of an occupational disease from performing his work in the last occupation in which injuriously exposed to the hazards of such disease, and 'disability' means the state of being so incapacitated.

■ The Industrial Commission concluded that Cawley did not comply with this statute because he either knew of the cause of his disease as early as January 1977 following Dr. Berry's tentative diagnosis or, by reason of the 1978 complaint filed in Colorado, was chargeable with knowledge that his lung disease was *probably* caused by his employment-related exposure to radiation. However, without making a finding of whether Cawley was, in fact, disabled, and if so, when the disability first occurred, the Commission concluded that Cawley's claim for benefits filed June 22, 1979 was untimely. Thus the Commission concluded that Cawley had not complied with the provisions of the statute based on a finding relating to only one of the statute's requirements.

We therefore reverse the Commission's dismissal of Cawley's application for a hearing. The cause is remanded to the Commission so that it may determine whether Cawley is disabled according to Idaho Workers' Compensation statutes and, if so, when the disability occurred, and for any other proceedings which follow from such determinations.

Costs to claimant; no attorney fees on appeal.

BOYLE, J., and HERNDON, J. Pro Tem., concur.

SHEPARD, J., sat but did not participate due to his untimely death.

JOHNSON, Justice, specially concurring.

I concur with the majority opinion that we should reverse the Commission's dismissal of Cawley's application for a hearing. However, in my view the case should be remanded to the Commission for a determination of when Cawley was first incapacitated, rather than whether he is disabled and, if so, when the disability occurred.

I am unable to agree with the conclusion of the majority that "incapacity" as used in I.C. § 72–448(2) means total incapacity and therefore is synonymous with "disablement." As I see it, when the statute refers to "incapacity, disablement, or death," the legislature intended to give a different meaning to "incapacity" than it did to "disablement." Although there is no statutory definition of incapacity, the use of the term "total incapacity" in I.C. § 72–102(18)(c) defining "disablement" is clear evidence that the legislature understood that there are different degrees of incapacity. I would define "incapacity" as the existence of a physical condition that is not so great as to preclude employment in the occupation in which the employee was injuriously exposed, but that is sufficient to decrease the employee's ability to perform the employee's work.