869 P.2d 1370

**Alice BLANG, Claimant,**

v.

**Basic American Foods, Employer, Defendant,**

and

**LIBERTY NORTHWEST INSURANCE CORPORATION, Surety, Defendant–Respondent,**

and

**American Motorist Insurance Company, Surety, Defendant–Appellant.**

No. 20448.

Supreme Court of Idaho, Boise, December 1993 Term.

March 8, 1994.

Bowen, Brassey, Gardner, Wetherell & Crawford, Boise, for appellant. Robert D. Bowen, argued.

Eberle, Berlin, Kading, Turnbow & McKlveen, Chtd., Boise, for respondent. Neil D. McFeeley, argued.

BISTLINE, Justice.

## BACKGROUND AND PRIOR PROCEEDINGS

Alice Blang ("Blang") was employed by Basic American Foods in 1983. Her job was to sort and trim potatoes. In late 1984, she began to experience pain and numbness in her wrists. In March of 1985, Blang was diagnosed with work-related carpal tunnel syndrome in her right hand and possibly in her left hand. Blang decided not to undergo surgery. Upon the recommendation of one of her physicians, and after consulting with her supervisors, Blang discontinued trimming potatoes and began working as a janitor for Basic American Foods. Her physician recommended that she confine her activity to sweeping and that she avoid heavy lifting.

The testimony of Blang and her physicians established that, despite the change in jobs, she continued to experience varying levels of numbness, pain, and swelling in both hands. In November of 1988, Blang began to perform new and rigorous tasks as part of her janitorial duties for Basic American Foods. Her tasks included lifting heavy items and scrubbing large pots to remove water stains. By December 1988 she was experiencing greatly increased numbness and pain, including sensations of being "shocked." The evidence in the record is conflicting as to whether the symptoms that occurred in 1988 were new or were recurrences of her 1985 symptoms. In 1989, Blang was diagnosed with bilateral carpal tunnel syndrome. Upon the recommendation of Dr. Van Genderen, Blang ceased her janitorial work and again turned to trimming potatoes for Basic American.

The Industrial Commission apportioned liability for Blang's medical expenses and for temporary disability compensation benefits between two sureties: Liberty Northwest Insurance Corporation, which was the surety for Basic American Foods from August 1, 1976 through November 1, 1988 ("Liberty Northwest"), and American Motorist Insurance Company, the surety for Basic American Foods from November 1, 1988 through November 1, 1989 ("American Motorist"). The Commission held that Liberty Northwest was responsible for all medical benefits payable to Blang up to November 1, 1988, and held American Motorist responsible for payments incurred after that date. Although the Industrial Commission apportioned liability to American Motorist on the premise that Blang's work activities in December 1988 significantly aggravated her underlying carpal tunnel syndrome, it did not find whether and when Blang was "totally incapacitated" or disabled. Upon American Motorist's appeal of the Industrial Commission's decision, this Court noted that it was not a finder of fact and remanded the matter to the Industrial Commission for more specific findings, relying on *Cawley v. Idaho Nuclear Corp.*, 117 Idaho 34, 784 P.2d 890 (1989), and on Idaho Code § 72–102(18)(c). *Liberty Northwest Ins. Corp. v. American Motorist Ins. Co.*, 122 Idaho 66, 831 P.2d 534 (1992).

On remand, the Industrial Commission found that Blang was first disabled from working on the trimline by her occupational disease in 1985 and was then disabled from performing heavy janitorial tasks from May 1989 through June 1989. The Commission then adopted its previous apportionment of liability for Blang's compensation between Liberty Northwest and American Motorist.

American Motorist again appeals. This time, American Motorist argues that (1) the determination by the Industrial Commission that Blang suffered disability in 1989 was not supported by substantial competent evidence; (2) Blang was not disabled within the meaning of Idaho Code § 72–102(18)(c); and (3) policy reasons prohibit this apportionment.

## ANALYSIS

### I. An employee may be disabled more than once by a particular occupational disease.

The gist of American Motorist's appeal is that Blang's disability, first experienced in 1985, continued until 1989, from which American Motorist concludes that Blang did not suffer a "new" disability. Implicit in American Motorist's argument is that an employee cannot be disabled more than once by a given occupational disease, particularly when the further disabilities involve the same parts of the body as the first disability. We disagree.

This Court recently concluded that carpal tunnel syndrome is an occupational disease within the meaning of the Worker's Compensation Act. *Kinney v. Tupperware Co.*, 117 Idaho 765, 792 P.2d 330 (1990). Idaho Code § 72–437 specifies when a worker is entitled to compensation for an occupational disease:

**Idaho Code § 72–437. Occupational diseases—Right to compensation.**—When an employee of an employer suffers an occupational disease and is thereby disabled from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease, ..., and the disease was due to the nature of an occupation or process in which he was employed within the period previous to his disablement as hereinafter limited, the em-

ployee, ... shall be entitled to compensation.

Idaho Code § 72–102(18)(c) further defines the right to compensation as follows:

**Idaho Code § 72–102(18)(c).** 'Disablement,' except in the case of silicosis means the event of an employee's becoming actually and totally incapacitated because of an occupational disease from performing his work in the last occupation in which [he or she was] injuriously exposed to the hazards of such disease, and "disability" means the state of being so incapacitated.

These provisions mean that "a claimant can receive no compensation for an occupational disease unless he is 'totally incapacitated ... from performing his work in the *last* occupation in which [he or she was] injuriously exposed to the hazards of such [occupational] disease....' " *Jones v. Morrison-Knudsen Co.*, 98 Idaho 458, 462, 567 P.2d 3, 7 (1977) (emphasis added).

Neither of the above Idaho Code sections lend any support to American Motorist. As defined in I.C. § 72–102(18)(c), the condition of disability is more than the pain and discomfort that may and often does arise from an occupational disease. Disability is therein defined as the state of becoming "actually and totally incapacitated" from further performing the particular tasks that induced such incapacity. The record discloses that Blang was not disabled, as that term is defined, between 1985 and 1988. Undoubtedly she was beset during that time by occasional pain and discomfort as a result of her carpal tunnel syndrome, but nevertheless she was able to perform the janitorial tasks of her employment with Basic American Foods. American Motorist errs in equating the symptoms which do not incapacitate an employee with the state of disability.

Furthermore, Idaho Code § 72–437 obviously contemplates that the same disability is likely to arise multiple times throughout an employee's lifetime, for which reason it limits an employer's liability to the disability that arose from the particular labor performed on behalf of that employer.

The proper focus of the Industrial Commission's inquiry in addressing employee/em-

ployer circumstances such as presented here, is not whether the injured employee has experienced prior symptoms, but whether the employee is totally incapacitated from performing the work tasks that brought about the incapacity. The employee either is or is not incapacitated. Prior symptoms, admittedly endured by Blang, are relevant in determining whether the employee's occupational disease was incurred during the course of his or her employment, but are not relevant to the determination of total incapacity.

Therefore, we hold that the Industrial Commission proceeded correctly when it determined that Blang became totally incapacitated in 1989. In doing so, the Commission relied upon the testimony of Blang and her physicians and upon medical reports. The record discloses that Blang suffered extreme pain as a result of the tasks which she performed in 1988 and 1989 and was unable to continue such activities. Medical reports sustain Blang's own account of her symptoms. This evidence is substantial and competent; we therefore affirm the finding by the Industrial Commission that Blang became disabled by the job tasks which she was assigned to perform in November and December of 1988. *See Kinney v. Tupperware Co.*, 117 Idaho at 769, 792 P.2d at 334.

## II. The apportionment between the two sureties in this case will be upheld.

■ Previously, this Court has stated that a surety is potentially liable for compensation if (1) the surety insured the employer within one year prior to the date the employee suffered total incapacitation from an occupational disease other than silicosis; (2) the injurious exposure occurred during the employment of the employee by the employer and while the surety insured the employer; and (3) the employee is totally incapacitated from performing the employee's work in the last occupation in which the employee was injuriously exposed to the hazards of the occupational disease that caused the employee's total incapacity. *Peckham v. Producer's Lumber Co.*, 116 Idaho 675, 678, 778 P.2d 797, 800 (1989). The actual liability of sureties depends upon the factual findings made by the Industrial Commission as to when injurious exposure occurred and when total incapacity was reached. *Id.*, 116 Idaho at 679, 778 P.2d at 801.

■ In this case, the Industrial Commission found that Blang was injuriously exposed in 1985 and in December 1988, and that Blang was totally incapacitated in early 1985 and in May and June of 1989. American Motorist insured Basic American Foods from November 1, 1988, to November 1, 1989. Because Liberty Northwest did not insure Basic American Foods during the 1988 injurious exposure, the Industrial Commission correctly assessed liability for Blang's second disability to American Motorist. We have previously stated that apportionment by the Industrial Commission of medical expenses and temporary total disability benefits is a factual issue which will be upheld on review when supported by substantial and competent evidence. *Brooks v. Standard Fire Ins. Co.*, 117 Idaho 1066, 1070, 793 P.2d 1238, 1242 (1990).[1]

American Motorist advances several public policy arguments to contest the apportionment, chiefly relating to the supposed reluctance of sureties to insure employers whose employees suffer from occupational diseases. We have said, however, that an employer takes an employee as he finds him; employers have no guarantee that their employees will remain free of all illness, injury, or disease. *Wynn v. J.R. Simplot Co.*, 105 Idaho 102, 104, 666 P.2d 629, 631 (1983) (citations omitted). Indeed, we find that American Motorist's policy argument cuts the other way. Imposing the liability for the future

---

1. American Motorist cites *Bracke v. Baza'r, Inc.*, 293 Or. 239, 646 P.2d 1330 (1982), for the proposition that the recurrence of an employee's symptoms that do not affect the extent of the underlying disease does not shift liability to a subsequent employer. *Bracke*, 293 Or. at 250, 646 P.2d at 1337. Not only does *Bracke* lack precedential value for the decisions rendered by this Court, but American Motorist's reliance upon it is inapposite. *Bracke* puts the liability for an employee's compensation squarely on the subsequent employer, when the tasks performed for that employer have aggravated the employee's underlying disease. Since the activities performed by Blang in 1988 undisputedly aggravated her carpal tunnel syndrome, *Bracke* does not support American Motorist's contention.

disabilities suffered by an employee upon a surety which has long ceased to insure the employee's employer would be grossly unjust, would run counter to the rule stated in *Peckham*, 116 Idaho at 679, 778 P.2d at 801, and would undoubtedly discourage sureties from insuring particular employers.

## CONCLUSION

The order and decision on remand of the Industrial Commission that apportions liability between Liberty Northwest and American Motorist for Alice Blang's medical and surgical expenses and temporary total disability benefits is affirmed. Costs to Liberty Northwest. No attorney fees awarded on appeal.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.