686 P.2d 54

Schuyler M. CAREY, Claimant-Respondent, Cross-Appellant,

v.

CLEARWATER COUNTY ROAD DEPARTMENT, Employer; and State Insurance Fund, Surety, Defendants-Respondents, Cross-Respondents,

and

State of Idaho, Industrial Special Indemnity Fund, Defendant-Appellant, Cross-Respondent.

No. 14690.

Supreme Court of Idaho.

June 25, 1984.

David R. Risley, of Randall, Bengtson, Cox & Risley, Lewiston, for defendants-respondents, cross-respondents.

Philip E. Dolan, of Dolan & Jacobsen, Coeur d'Alene, for claimant-respondent, cross-appellant.

Karen Lansing, of Hawley, Troxell, Ennis & Hawley, for defendant-appellant, cross-respondent.

SHEPARD, Justice.

This is an appeal from an order of the Industrial Commission holding that claimant was totally and permanently disabled under the "odd-lot" doctrine, *see Smith v. Payette County*, 105 Idaho 618, 671 P.2d 1081 (1983); *Lyons v. Industrial Special Indemnity Fund*, 98 Idaho 403, 565 P.2d 1360 (1977), and allocating the amount of benefits to be paid plaintiff by the employer/surety and the Industrial Special Indemnity Fund. We affirm in part, reverse in part, and remand.

Claimant Carey had injured his back in 1968, had a lumbar disc removed, and been off work for a year. Thereafter, although he had had some difficulty with his back and had noted discomfort on occasion, he had had little work difficulty. In November 1977, during the course of his employment with Clearwater County Road Department, and while he was attempting to lift and reset a guardrail post weighing about 200 pounds, claimant felt a ripping, burning sensation in his lower back. He continued to notice discomfort in the area of his low back.

Carey consulted his physician, Dr. Cleto, who diagnosed the problem as low back compressive syndrome and prescribed medications, muscle relaxants, and physical therapy. The pain continued, and Cleto referred claimant to Dr. Thorson, who recommended conservative treatment. Although claimant sustained increasing pain in his back, he was able to continue working until he was laid off on November 30, 1978.

In February 1979, Dr. Thorson performed surgery on claimant to remove a disc at the lumbosacral level. The recovery from surgery was complicated by infections, and claimant felt the surgery did not improve his condition. Another doctor performed nerve block treatments, but those did not relieve the pain. At the time of the commission hearing, claimant was still experiencing constant pain in his back, legs, and groin, which pain impeded his normal activities. He could walk only a short distance and had trouble standing, sitting, or

driving for longer than 20 minutes. Dr. Cleto testified claimant would have trouble returning to work,[1] and Cleto found claimant's impairment to be 50%, one-fifth thereof being attributable to the 1968 injury and four-fifths to the 1977 injury.

In June 1980, claimant was evaluated in Spokane, Washington by a panel of physicians consisting of a neurologist and two orthopedists. That panel found claimant to have an impairment of 50% of the whole man, of which one-fifth was attributable to the 1968 accident and four-fifths to the 1977 accident. It recommended that claimant work where he was not required to do any heavy lifting or to remain in one position for long periods of time. While the panel opined that there was work which claimant could do, it did not identify any specific jobs which he could hold.

Witnesses were presented, on behalf of both the Industrial Special Indemnity Fund and the claimant, as to claimant's ability to obtain and handle light work which would not require lifting and which would allow him to stand or sit at will. It is sufficient to say that such testimony was conflicting as to claimant's physical ability and the availability of work which claimant could perform within claimant's geographical area.

Claimant himself testified as to his prior work history. He stated that after the 1968 injury, but prior to the 1977 injury, he had worked at various jobs, such as weigh clerk, grease monkey and mechanic's helper, and he indicated that his back problem had not bothered him to any considerable extent at that employment.

The commission found that claimant had a permanent physical impairment of 50% of the whole man. It found that 10% of the impairment preexisted the industrial accident and 40% was caused by the industrial accident.

The commission further held that claimant's job prospects were poor, at best, given the lack of sedentary work available in the claimant's geographical area, the claimant's lack of qualifications to do most of the sedentary work that was available, his inability to drive or ride in a car for the time necessary to travel to a larger market area, and his inability to work regularly and steadily due to his unreliable physical condition. These problems would prevent him from keeping a job other than for a sympathetic employer. The commission therefore found that claimant fell into the "odd-lot" category and was totally and permanently disabled.

The fund contends that the commission erred in finding claimant's "odd-lot" status. The fund argues that claimant has not attempted work since being laid off in 1978, despite his physical and vocational abilities for employment. The fund notes that the commission specifically found that claimant had not sought employment.

In *Lyons v. Special Indemnity Fund,* 98 Idaho 403, 565 P.2d 1360 (1977), this Court recognized the odd-lot doctrine. In *Lyons,* claimant was a laborer who throughout his life had sustained several injuries, none of which individually constituted a total permanent impairment, but the sum of which he claimed rendered him totally disabled. We noted that the commission, in determin-

1. "He has to get up, of course, relax those muscles. Standing up he has to sit down because—as I told you initially—that heel gaiting has given him some problems that are jarring the back. He can't do any bending or any lifting at the present time. Even lying down sometimes gives him problems already. So, those are limiting factors that a man has to suffer, as to how he would be able to get some comfort in any position he could find.

 \*　\*　\*　\*　\*　\*

 "I doubt if he will be able to work because of those factors I just mentioned, plus the fact that—I might offend him—he won't be reli-

able. He will be a guy that—you are talking of work now—seeing us in a room like this and doing things he cannot. I'm talking about the whole man as we mean here. He may be good during summer months. He may be able to drive. How about winter? How about fall? How about those areas where it will be rainy weather where he'll have some pain where he has to stay home? You cannot rely on a man like that, and as I say, it will be very limited things that he can do—and he might not be able to work the eight hours. He may not be able to last for two or four hours."

ing disability, had failed to consider all of Lyons' physical impairments, but instead had looked at only the one leading to the particular claim. In *Lyons*, we reversed and required an appraisal of claimant's ability to work, in light of the overall and combined effects, medical and non-medical, of his various injuries. We stated:

"[T]he effect of successive injuries may be greater than the sum of the impairments resulting from each. The Commission must therefore evaluate appellant's ability to find employment in the future after considering all of his physical impairments, not just the most recent one.

"In addition to the medical factor of permanent impairment, the Commission must also consider nonmedical factors such as age, sex, education, economic and social environment, training, and usable skills. I.C. § 72–425. The Commission's approach in this case does not adequately consider the effect of these nonmedical factors on appellant's ability to obtain employment. Appellant has a ninth grade education and no special training or skills. His primary vocational asset was his ability to perform heavy manual labor. While his lack of formal education, special training, and usable skills did not prevent him from working in the past, it will undoubtedly lessen his chances of finding employment in the future. At best, appellant can only offer a prospective employer the ability to perform unskilled light work of a highly restricted nature. His position differs from that of someone such as an accountant who would still have valuable skills to offer an employer in spite of a substantial physical handicap.

"It is not necessary for a person to be physically unable to do anything worthy of compensation to be classified as totally disabled.

'An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled.' *Arnold v. Splendid Bakery*, 88 Idaho 455, 463, 401 P.2d 271, 276 (1965).

Claimants such as those described in the above quotation from Arnold are often classified as 'odd-lot' workers. See 2 A. Larson, The Law of Workmen's Compensation § 57.51 (1976). While they are physically able to perform some work, they are so handicapped that they will not be employed regularly in any well-known branch of the labor market—absent a business boom, the sympathy of a particular employer or friends, temporary good luck, or a superhuman effort on their part." *Lyons, supra*, 98 Idaho at 406, 565 P.2d at 1363.

*See also Smith v. Payette County*, 105 Idaho 618, 671 P.2d 1081 (1983); *Gordon v. West*, 103 Idaho 100, 645 P.2d 334 (1982); *Reifsteck v. Lantern Motel & Cafe*, 101 Idaho 699, 619 P.2d 1152 (1980); *Francis v. Amalgamated Sugar Co.*, 98 Idaho 407, 565 P.2d 1364 (1977).

The Special Indemnity Fund asserts first that claimant failed to make the requisite showing that he falls into the odd-lot category, and second that, even assuming such a showing, it was adequately rebutted by the fund and the employer. We disagree.

█ Odd-lot status is a factual determination within the discretion of the Industrial Commission, *Gordon v. West, supra; Reifsteck v. Lantern Motel & Cafe, supra*, and here we hold that the commission did not abuse its discretion in placing claimant into the odd-lot category.

In *Lyons, supra*, 98 Idaho at 406–407, 565 P.2d at 1363–64, the court set forth the burden of proof on the issue of odd-lot status, stating:

"If the evidence of the medical and nonmedical factors places a claimant prima facie in the odd-lot category the burden is then on the employer, the Fund in this case, to show that some kind of suitable work is regularly and continuously available to the claimant ... [Citations omitted.] It is much easier for the Fund to prove the employability of the

appellant for a particular job than for appellant to try to prove the universal negative of not being employable at any work.

"It is the opinion of this Court that the evidence as a matter of law places the appellant within the odd-lot category ... Therefore, the Fund must show that some kind of suitable work is regularly and continuously available to appellant.

"In meeting its burden, it will not be sufficient for the Fund to merely show that appellant is able to perform some type of work. Idaho Code § 72–425 requires that the Commission consider the economic and social environment in which the claimant lives. To be consistent with this requirement it is necessary that the Fund introduce evidence that there is an actual job within a reasonable distance from appellant's home which he is able to perform or for which he can be trained. In addition, the Fund must show that appellant has a reasonable opportunity to be employed at that job. It is of no significance that there is a job appellant is capable of performing if he would in fact not be considered for the job due to his injuries, lack of education, lack of training, or other reasons."

In *Gordon v. West, supra,* 103 Idaho at 104, 645 P.2d at 338, we stated:

"Although the pain he suffered while attempting to drive truck caused him to cease his efforts [at obtaining employment], the record does not disclose that Gordon attempted to obtain or was denied any other suitable employment which he might be capable of performing. A claimant must do more than assert that he cannot perform his previous type of employment in order to qualify as an 'odd-lot' worker. As in the *Lyons* case, he must show what other types of employment he has attempted. The commission, as the factfinder, must consider whether the claimant has tried and could not perform *other* work. In the absence of such a showing, claimant failed to establish that there was no suitable occupation available to him."

In the instant case, the burden to prove claimant's employability did not shift to the employer unless claimant satisfied the requirement that he make a reasonable attempt to obtain work. The fund argues that, despite his physical and vocational abilities, claimant has attempted no work since being laid off in 1978, and the fund points to the specific finding of the commission that the claimant has not sought employment. Although the commission did find that claimant has not sought employment, other findings of the commission, which are amply supported by the evidence, indicate that the claimant had inquired into work and that his further efforts would have been futile in view of the lack of sedentary work available, claimant's inability to travel, claimant's lack of qualifications for any sedentary work that was available, and claimant's inability to work regularly and steadily due to his unreliable physical condition. We hold that claimant satisfied his burden of showing a *prima facie* case of being an odd-lot worker.

■ The instant case is distinguishable from this Court's decision in *Gordon v. West, supra.* In *Gordon,* the commission specifically found that claimant was not totally and permanently disabled and did not fall within the odd-lot category. In *Gordon,* substantial medical testimony was cited by the commission, to the effect that Gordon's problems had been resolved through surgery, to which he had responded well, that Gordon's injury was no longer significantly symptomatic, and that Gordon could return to employment. In *Gordon,* we deferred to the expertise and discretion of the commission in its holding that Gordon had not shown a *prima facie* odd-lot case. Here, we again defer to the expertise and discretion of the commission in evaluation of the testimony which is not damaging to, but rather supports, this claimant's contention that he is unemployable. We hold, in affirming the commission, that the burden therefore shifted to the employer/surety to demonstrate the availability of regular employment within claimant's capabilities.

The commission next stated, "In order for claimant to be removed from the odd-lot category, it is necessary that the Industrial Commission be able to make specific findings of fact as to what avenues of gainful employment are, at the present, open to claimant and whether a reasonably stable market now exists for the claimant's services in that employment. *Francis v. Amalgamated Sugar Co.*, 98 Idaho 407, 565 P.2d 1364. The commission concludes that the defendants have failed to sustain their burden of proof in this regard."

 Again, we hold that such determination lay within the discretion of the commission. While the evidence is conflicting to some extent, in our view it militates in favor of claimant and clearly supports the holding of the commission that the employer/surety has not sustained its burden of proof necessary to remove the claimant from the odd-lot category. *In re Chavez*, 104 Idaho 279, 658 P.2d 950 (1983); *Gradwohl v. J.R. Simplot Co.*, 96 Idaho 655, 534 P.2d 775 (1975); *Earl v. Swift & Co.*, 93 Idaho 546, 467 P.2d 589 (1970); *Arnold v. Splendid Bakery*, 88 Idaho 455, 401 P.2d 271 (1965).

The Industrial Special Indemnity Fund argues that claimant did not have, prior to the industrial accident in 1977, a permanent physical impairment, as that word is defined in I.C. § 72–332.[2]

In the instant case the commission found:

"The Idaho Supreme Court has construed [I.C. § 72–332] to mean that the preexisting condition is any condition which reasonably could constitute a hindrance or obstacle to obtaining employment or reemployment and that it need

not actually have interfered with ones' attempts to obtain employment. *Gugelman v. Pressure Treated Timber*, 102 Idaho 356 [630 P.2d 148 (1981)]. The Commission concludes that the claimant's 1968 back injury and subsequent back surgery resulted in just such a preexisting condition. Dr. Dwinnel indicated that a back, from which a disc had been removed, was not as good as it was before it had any trouble. It is well known to the Commission that employers are reluctant to employ individuals who have undergone such back surgery. The Commission therefore concludes that the claimant's preexisting back condition constituted the type of preexisting permanent physical impairment which requires apportionment of total disability compensation between the Industrial Special Indemnity Fund and the employer and surety under Section 72–332, *Idaho Code*."

This Court in *Royce v. Southwest Pipe of Idaho*, 103 Idaho 290, 647 P.2d 746 (1982); *Gugelman v. Pressure Treated Timber Co.*, 102 Idaho 356, 630 P.2d 148 (1981); and *Curtis v. Shoshone County Sheriff's Office*, 102 Idaho 300, 629 P.2d 696 (1981), has laid out the guidelines for determination of a pre-existing permanent physical impairment. In *Royce*, we held that a preexisting physical impairment within the meaning of I.C. § 72–332(2) is any condition which reasonably could constitute a hindrance or obstacle to employment, when all facts were disclosed, or reasonably could be disclosed, to the employer. We noted that actual hindrance to employment is not a prerequisite to a finding of a pre-existing

---

2. "72–332. **Payment for second injuries from industrial special indemnity fund.**—(1) If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the preexisting impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the preexisting impairment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation

benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his compensation benefits out of the special industrial indemnity fund.

"(2) As used in this law, 'permanent physical impairment' means any permanent condition, whether congenital or due to the injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed."

physical impairment and that an objective test must be utilized.

■ In the instant case, the condition of claimant's back prior to the 1977 accident is perhaps a close question, but we find the resolution of that evidence by the commission to be reasonable and supported by the evidence, and we will not disturb it on appeal. The fund argues that the evidence does not show that claimant was hindered in his employment by the 1968 injury or subsequent surgery. The claimant here did testify that he had some problems with his back following the 1968 accident and surgery. The documentation of claimant's treating physicians indicated his history of back trouble. The Spokane panel of doctors concluded that the residual effects of the 1968 injury were still in existence. Further, the commission, in its expertise and experience in back injury cases, could take judicial notice of employers' reluctance to hire employees who have histories of back injuries and surgery. Hence, we find no error in the commission's finding of a pre-existing physical impairment in the form of a back injury, compensable by the Industrial Special Indemnity Fund.

The fund argues on this appeal that the commission erred when it fixed the share of liability to be borne by the employer/surety as of the date of the hearing. The fund argues, on the basis of several statutory provisions, that the amount to be paid by the employer/surety should be an adjustable figure computed annually in accordance with the changing average weekly state wage under I.C. § 72–409.[3] We note that this dispute is solely between the fund and employer/surety, since claimant will receive the escalating amount in any case.

The commission fixed the employer/surety's liability as follows:

"In this case, the employer and surety are liable for payment of compensation to the claimant in the amount of 90% of the whole man. Such payments are computed under Section 72–428, *Idaho Code*,[4] in the amount of 55% of the average weekly state wage in effect in the year of the injury, 1977. The claimant is therefore entitled to recover from the employer and surety, income benefits in the amount of 55% of the 1977 average weekly state wage, $165.00, or $90.75 for a period of 450 weeks commencing with the date the claimant was determined to be totally and permanently disabled, the date of the hearing herein, September 23, 1981.

\* \* \* \* \* \*

"The claimant is entitled to recover from the Industrial Special Indemnity Fund, the difference between the permanent partial disability compensation paid by the employer and surety and the total and permanent disability benefits computed under Section 72–408 and 409, *Idaho Code*, commencing September 23, 1981. These benefits shall continue for the remainder of the claimant's life."

I.C. § 72–428, upon which the commission relied, sets out the benefits to be paid an injured worker for permanent partial disability, but does not state whether the contribution by the employer/surety should be fixed or adjustable. It provides in pertinent part:

"**72–428. Scheduled income benefits for loss or losses of use of bodily mem-**

---

3. **72–409. Maximum and minimum income benefits for total disability.**
 \* \* \* \* \* \*
 (2) For the purpose of this law the average weekly wage in the state shall be determined by the commission as follows: on or before June 1 of each year, the total wages reported on contribution reports to the department of employment for the preceding calendar year shall be divide by the average monthly number of insured workers determined by dividing the total insured workers reported for the preceding year

by twelve (12). The average annual wage thus obtained shall be divided by fifty-two (52) and the average weekly state wage thus determined rounded to the nearest dollar. The average weekly state wage as so determined shall be applicable for the calendar year commencing January 1 following the June 1 determination.

4. We note that this case probably falls under I.C. § 72–429, discussed *infra*, but such does not change our analysis.

bers.—An employee who suffers a permanent disability less than total and permanent shall, in addition to the income benefits payable during the period of recovery, be paid income benefits for such permanent disability in an amount equal to fifty-five per cent (55%) of the *average weekly state wage* for not less than the percentages of loss of the member, or of the whole man, stated against the following scheduled permanent impairments respectively: ..." (Emphasis added.)

I.C. § 72–429 is a companion provision to I.C. § 72–428 and provides for the measurement of benefits for permanent disabilities not scheduled under I.C. § 72–428. We note that I.C. § 72–429 refers back to I.C. § 72–409, and presumably to I.C. § 72–409(2), for the calculation of benefits, and that § 72–429 specifies neither the "currently applicable average weekly state wage" nor the "average weekly state wage as of the time of the accident." I.C. § 72–429 states:

"**72–429. Unscheduled permanent disabilities.**—In all other cases of permanent disabilities less than total not included in the foregoing schedule the amount of income benefits, computed on the basis set forth in section 72–409, shall be not less than the evaluation in relation to the percentages of loss of the members, or of loss of the whole man, stated against the scheduled permanent impairments, as the disabilities bear to those produced by the permanent impairments named in the schedule."

The instant case becomes complex, in view of the commission's finding that claimant is within the odd-lot category and therefore totally and permanently disabled. I.C. § 72–409 contains the escalator provision which dictates the computation of the term "average weekly state wage" in cases of permanent *total* disability. *See* I.C. § 72–408(1) and (2). In the instant case, the employer's liability for the permanent partial disability caused by the 1977 accident is normally fixed under §§ 72–408 during the recovery period, and 72–428 or 72–429 after stabilization. It would not be

subject to the escalator provision of I.C. § 72–409. The fund argues that the result should be different here, since claimant is totally and permanently disabled as a result of falling within the odd-lot category. We disagree.

I.C. § 72–408 sets forth the income benefits collectible by an injured employee during recovery, and subsections (1) and (2) thereof speak of total disability benefits during the recovery period, measured in terms of the "currently applicable average weekly state wage." I.C. § 72–408(3), on the other hand, treats partial disability benefits during the period of recovery, measured according to the decrease in the specific worker's wage earning capacity. Hence, once the claimant's condition is stabilized and his disability is rated, his benefits are calculated differently: If the disability is total, it is still computed by the "currently applicable average weekly state wage" of I.C. § 72–408(1) or (2), but if it is a partial permanent disability, it is calculated under I.C. § 72–428, which makes no reference to the "currently applicable" average weekly state wage of I.C. § 72–408(1) and (2). Hence, we hold that the legislature intended benefits for partial permanent disability to be fixed and quantifiable. We note that partial permanent disability benefits are collectible for a maximum of 500 weeks, and in the great majority of cases, only for some statutorily-set percentage of 500 weeks. *See* I.C. § 72–428(1), (2), and (3). Those benefits are not, nor are they intended to be, whole-life benefits.

As we have noted, the present case is peculiar, in that this claimant is admittedly totally, permanently disabled, by virtue of his being placed within the odd-lot category. We are asked to increase the employer's responsibility in this case, solely because of the happenstance of its being odd-lot, so that the employer's contribution will increase every year, rather than remaining stable, as it would be in a non-odd-lot case. We refuse to hold that the escalator provision applies here. An examination of the policy behind the creation of the Industrial

Special Indemnity Fund indicates that the employer's liability for permanent partial impairment should not increase, simply because a claimant is totally and permanently disabled through application of the odd-lot doctrine because of injuries unrelated to the industrial accident.

The philosophy in creating second injury funds such as the Idaho Industrial Special Indemnity Fund is to encourage employers to hire partially incapacitated persons and to encourage partially incapacitated persons to seek employment. *Royce v. Southwest Pipe*, 103 Idaho 290, 647 P.2d 746 (1982); *Curtis v. Shoshone County Sheriff's Office*, 102 Idaho 300, 629 P.2d 696 (1981); Larson, Workmen's Compensation Law § 59.31. We interpret the second injury fund statutes as intending to make employers liable only to the extent of disability caused by the industrial accident, with any additional disability to be covered by the second injury fund. We deem such an interpretation to be consistent with the philosophy of encouraging employers to hire older and handicapped workers and consistent with the purpose of spreading such risks of hiring among employers. That risk-spreading is reasonably anticipated by employers, who pay their share of the specially dedicated excise tax therefor under I.C. § 72–327. We therefore affirm the commission's holding, that the escalator provision of I.C. § 72–408(1) and (2) does not apply to the employer's share of liability in this case.

We turn now to the percentage of liability assigned to the employer/surety and to the fund, respectively. We note that the commission found that claimant had a 10% preexisting impairment and that the accident caused 40% further impairment, for a total impairment of 50% of the whole man. The commission found claimant to be totally permanently disabled under the odd-lot doctrine and assigned 90% of that total, permanent disability to the employer/surety and 10% to the fund. We hold that this was error, under the rules we announce today.

In three cases presently pending before this Court, in each of which a preexisting physical impairment is involved,[5] the commission has found claimants to be of odd-lot characterization and has assigned the non-medical factors to the employer/surety or the fund. This assignment of the non-medical proportion of liability has been inconsistent.

In *Hartley v. Miller-Stephan*, Case No. 14670, the commission found claimant to have a preexisting impairment of 19% of the whole man and to have sustained work injuries amounting to an additional 9% impairment. The amount of disability caused by the accident was found to be 9%. The commission went on to conclude that claimant was a member of the odd-lot category and, therefore, 100% disabled. In apportioning the liability between the employer and the fund, the commission found the employer responsible for 81% disability and the fund for 19% disability. Thus, the commission in *Hartley* gave liability for the 72% non-medical disability factors to the employer.

5. The relevant definitions of the terms "impairment" and "disability," as set out in the Idaho Code, are as follows:

"**72–422. Permanent impairment.**—'Permanent impairment' is any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or nonprogressive at the time of evaluation. Permanent impairment is a basic consideration in the evaluation of permanent disability, and is a contributing factor to, but not necessarily an indication of, the entire extent of permanent disability."

"**72–423. Permanent disability.**—'Permanent disability' or 'under a permanent disability' results when the actual or presumed ability to engage in gainful activity is reduced or absent because of permanent impairment and no fundamental or marked change in the future can be reasonably expected."

"**72–425. Permanent disability evaluation.**—'Evaluation (rating) of permanent disability' is an appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors provided in section 72–430, Idaho Code."

In *Nielson v. State of Idaho, Industrial Special Indemnity Fund,* 106 Idaho 878, 684 P.2d 280 (1984), claimant's preexisting impairment amounted to 20% of the whole man. Although the commission failed to make a finding as to the impairment caused by the industrial accident, the commission did find that the disability resulting from the work-related accident was 15%. The commission determined claimant to be an odd-lot worker and it ordered the fund to pay the difference between the 15% permanent disability for which the employer was held responsible, and the claimant's 100% total permanent disability. Thus, in *Nielson,* the commission ordered that the non-medical disability factors be covered by the fund.

In the instant case, as above-noted, Mr. Carey's impairment is only 50% and his disability is 100%; this time, the employer, rather than the fund, is told to pick up the difference between the impairment and the total, permanent disability, *i.e.,* the non-medical factors. We find that some uniform rule of law should necessarily be imposed in these similar cases, to achieve consistency and clarity for the parties and for the commission.

The parties in these three cases disagree on how liability for non-medical factors should be apportioned. The fund argues that, because the employers are liable for the non-medical portion of disability where there is no pre-existing physical impairment to trigger the fund's liability, the employers should likewise pay the non-medical portion where there is a pre-existing physical impairment. The employers, on the other hand, argue that the policy behind the establishment of the second fund, encouraging employers to hire handicapped workers, militates toward limiting the employers' liability to that percentage of disability directly caused by the accident.

■ We believe that the appropriate solution to the problem of apportioning the non-medical disability factors, in an odd-lot case where the fund is involved, is to prorate the non-medical portion of disability between the employer and the fund, in proportion to their respective percentages of responsibility for the physical impairment. Thus, in the instant case, Mr. Carey's preexisting impairment was 10% of the whole man, and his physical impairment from the accident is an additional 40%, resulting in a 50% impairment. Claimant is 100% disabled, by virtue of the odd-lot doctrine, so an additional 50% non-medical factors, over and above the 50% physical impairment, need to be allocated between the employer/surety and the fund. The fund is therefore responsible for $10/50$, or $1/5$ (20%), of the non-medical portion of disability, and the employer is liable for $40/50$, or $4/5$ (80%), of the non-medical factors. In accord are *Northwest Carriers v. Industrial Comm'n,* 639 P.2d 138 (Utah 1981); and *Desbian v. Key Milling Co., Inc.,* 3 Kan. App.2d 43, 588 P.2d 482 (1979). The Utah Supreme Court explained this proration method in the *Northwest Carriers* case, *supra,* 639 P.2d at 141–142:

"Based on the purpose and language of the Workmen's Compensation Act, we hold that the Second Injury Fund's responsibility for disability benefits is not limited to Merz's 15% preexisting physical impairment. Rather, the Second Injury Fund should bear the cost of disability payments to the extent that the 15% preexisting impairment, acting in combination with Merz's age, mental abilities and lack of rehabilitative prospects, contributed to his total disability. Thus a proper assessment of responsibility for nonphysical factors should be determined by the proportion which the preexisting physical impairment bears to the additional physical impairment resulting from the instant industrial accident, that is, $15/55$ths. Therefore, the Second Injury Fund is responsible not for 15%, but $15/55$ths or 27%, of the total disability."

On remand, the commission is instructed to enter an order reapportioning liability, in accordance with the above stated rule.

■ Claimant next asserts that the commission erred in denying him attorneys' fees under I.C. § 72–804 in proceedings before the commission. Claimant request-

ed these fees on the basis that defendants unreasonably contested the claim and that the surety discontinued payment of his compensation benefits. We have examined the record and find no abuse of discretion by the commission in denying the claimant his attorneys' fees.

We have examined the parties' other assertions of error and find them to be without merit. The orders of the Industrial Commission are affirmed, except as to the percentages of liability assigned to the employer/surety and the Industrial Special Indemnity Fund. The case is remanded to the commission for entry of an order consistent with this opinion. Costs to respondent Carey, to be paid by both the employer/surety and the Special Indemnity Fund. No attorneys' fees on appeal.

DONALDSON, C.J., and BAKES, BISTLINE and HUNTLEY, JJ., concur.