910 P.2d 759

Walter J. OGDEN, Claimant–Appellant,

v.

Ronald W. THOMPSON, employer, and State Insurance Fund, surety, Defendants–Respondents.

No. 21749.

Supreme Court of Idaho,
North Idaho, October 1995 Term.

Jan. 31, 1996.

Cameron L. Phillips, Coeur d'Alene, for appellant.

Harry J. Magnuson, Coeur d'Alene, for respondents.

TROUT, Justice.

This is an appeal from a decision of the Idaho Industrial Commission (Commission) finding that appellant's disk herniation and radiculopathy were not the result of an injury caused by a work accident nor an occupational disease contracted in the course of appellant's employment. We affirm the decision of the Industrial Commission.

## I.

### BACKGROUND

Walter J. Ogden (Ogden) was forty-one years of age at the time of his hearing and has worked primarily in grocery stores and mechanical occupations over the course of his employment life, beginning at age fifteen. From November of 1978 through 1991, Ogden lived in Cottage Grove, Oregon. There he worked in a gas station, as a mechanic for the school district, and as a reserve police officer. In October of 1983, while working at a gas station, Ogden suffered a cervical injury for which he received chiropractic care for several years thereafter. Ogden also suffered a low back strain while lifting a large tire in 1982 which resulted in a muscle spasm.

Ogden moved to Coeur d'Alene in September of 1991 and obtained employment at respondent's tire store, "The Tire Doctor." As shop manager of "The Tire Doctor," Ogden was required to do a substantial amount of lifting, bending, and twisting in connection with his duties installing tires on vehicles. Early snowfall prompted heavy demand for services at "The Tire Doctor" during the months of November and December, 1992, and Ogden worked significant overtime during this period.

Ogden began noticing increasing low back pain in February of 1993 and he began seeing his chiropractor, Dr. Anderson, on a more regular basis. Ogden eventually failed to obtain any relief from Dr. Anderson and

he began seeing another chiropractor, Dr. Boughton, before resorting to Dr. Hjeltness, a physician referred to him by Dr. Boughton. Ogden terminated his employment with "The Tire Doctor" on March 31, 1993, on the advice of Dr. Boughton and Dr. Hjeltness. Dr. Hjeltness subsequently referred Ogden to a neurologist, Dr. Britt, who obtained an MRI on Ogden's back. Dr. Britt diagnosed Ogden's disk herniation and radiculopathy in April of 1993.

The Commission held a hearing on May 18, 1994, and denied Ogden's claim for worker's compensation benefits concluding that "[t]he evidence fails to establish that [Ogden] suffered an injury caused by an accident arising out of and in the course of his employment, nor does the evidence establish that he contracted an occupational disease in the course of his employment."

## II.

### STANDARD OF REVIEW

A claimant seeking compensation for an employment related injury has the burden of showing a "compensable disablement" under the Idaho worker's compensation law. *See* I.C. § 72–101, et seq. *Comish v. J.R. Simplot Fertilizer Co.*, 86 Idaho 79, 87, 383 P.2d 333, 338 (1963); *Neufeld v. Browning Ferris Indus.*, 109 Idaho 899, 902, 712 P.2d 600, 603 (1985). In any review of a decision by the Industrial Commission, the Court will review questions of fact only to determine whether substantial and competent evidence supports the Commission's findings and will exercise free review over questions of law. Idaho Const. art. V, § 9; *Dewey v. Merrill*, 124 Idaho 201, 203, 858 P.2d 740, 742 (1993). In making its determination the Court will liberally construe the worker's compensation law in favor of the claimant. *Kinney v. Tupperware Co.*, 117 Idaho 765, 769, 792 P.2d 330, 334 (1990). The humane purposes which it serves leaves no room for narrow, technical construction. *Id.*

## III.

### FINDINGS OF INDUSTRIAL COMMISSION

The Commission noted in its findings of fact, that Ogden had pre-existing symptoms

of back problems prior to the time he went to work at "The Tire Doctor," that the evidence presented failed to establish any mishap or event occurring in the course of Ogden's employment to which his injury may be attributed, and that Ogden's work is not distinguishable from many other occupations which involve heavy labor. The Commission then concluded that Ogden failed to sustain his burden of proving that his injury is compensable under the worker's compensation law.

■ The aggravation of a pre-existing condition is only compensable if such aggravation is by accident and not by an occupational disease. *Nelson v. Ponsness–Warren Idgas Enters.*, 126 Idaho 129, 133, 879 P.2d 592, 596 (1994). The Commission concluded, and Ogden does not dispute, that "[t]he evidence fail[ed] to establish that [Ogden] suffered an injury caused by an accident arising out of and in the course of his employment." Since no accident occurred, Ogden would not have a compensable claim if his herniated disk and radiculopathy are pre-existing conditions. The Commission noted in its findings that there was evidence that Ogden related symptoms to his chiropractor prior to beginning his employment with employer-respondent "which could also be consistent with a low back or lumbar disc injury." The Commission failed to conclude, however, that Ogden's herniated disk and radiculopathy were pre-existing conditions and merely stated that "[i]f Claimant's condition was produced by aggravation of a pre-existing condition, it is not compensable because the aggravation was not by an 'accident'."

■ The finding of a pre-existing condition is irrelevant, however, in light of the Commission's other conclusion that Ogden did not contract an occupational disease. Dr. Sears testified, in his deposition, that a herniated disk is often the result of a "non event" and can occur in individuals who are not involved in any strenuous activity at all. He cited a common presentation by a patient as involving nothing more than bending over to tie shoelaces in the morning. Dr. Sears also allowed that disk herniation can occur through trauma and that the key determinant is the activity of the patient upon the onset of pain. Dr. Sears had examined Ogden and his review of the patient's symptoms and history led him to conclude that, in the absence of any specific precipitating event, the disk herniation was not caused by Ogden's employment. Although another medical expert testified to the contrary, we are not to weigh the evidence offered but must simply determine if there is substantial and competent evidence to support the Commission's findings. *See, e.g., Pomerinke v. Excel Trucking Transp., Inc.*, 124 Idaho 301, 305, 859 P.2d 337, 341 (1993).

Support for the Commission's finding that Ogden did not contract an occupational disease was also found in the Commission's characterization of Ogden's duties. Occupational disease is defined as:

a disease due to the nature of an employment in which the hazards of such disease actually exist, are characteristic of, and peculiar to the trade, occupation, process, or employment. . . .

I.C. § 72–102(18)(a). In its findings, the Commission noted that the statutory definition of an occupational disease has been interpreted by this Court to mean that the employment must result in a hazard which distinguishes that particular employment from the general run of occupations. *Bowman v. Twin Falls Constr. Co., Inc.*, 99 Idaho 312, 323, 581 P.2d 770, 781 (1978) (quoting *Underwood v. National Motor Castings Div.*, 329 Mich. 273, 45 N.W.2d 286, 286–87 (1951)). The Commission found that Ogden's work was, in fact, "not distinguishable from many other occupations which involve strenuous or heavy labor" and concluded that he did not contract an occupational disease in the course of his employment.

■ The Commission noted that Ogden's duties involved a significant amount of heavy lifting, twisting, and bending. These activities are certainly not exclusive to Ogden's occupation and are typical of activities common to the general run of occupations involving manual labor. In *Kinney*, the Commission granted benefits based upon its finding that the claimant suffered from Carpal Tunnel Syndrome which the Commission categorized as an occupational disease. 117 Idaho at 769–70, 792 P.2d at 334–35. The Commis-

sion based its conclusion in part upon its finding that "job risk factors (hazards) for the development of Carpal Tunnel Syndrome actually existed, were characteristic of, and particular to, the occupation, process, and employment of [the claimant]." *Id.* at 769, 792 P.2d at 334. In this case, however, Ogden failed to present sufficient evidence regarding the particular hazards of his job as shop manager to justify a finding that he contracted an occupational disease. Ogden relied solely on the testimony of his medical expert as the basis for his occupational disease claim which, as we noted above, conflicted with that of another expert. "The findings of the [Industrial Commission] when supported by substantial, though conflicting, evidence will not be disturbed on appeal." *Comish,* 86 Idaho at 87, 383 P.2d at 338.

## IV.

### CONCLUSION

The record contains substantial and competent evidence to support the Commission's conclusion that Ogden did not suffer an injury caused by an accident nor did he contract an occupational disease in the course of his employment. The Commission's order denying Ogden's claim for compensation is therefore affirmed. Costs on appeal to respondents.

McDEVITT, C.J., and JOHNSON, SILAK and SCHROEDER, JJ., concur.