969 P.2d 249

**In the Matter of Marc Antoine Vincent, Deceased.**

**Tammie VINCENT, Claimant–Appellant,**

v.

**DYNATEC MINING CORPORATION, Employer, and Argonaut Insurance Company, Surety, Defendants–Respondents.**

No. 24170.

Supreme Court of Idaho,
Boise, September 1998 Term.

Dec. 8, 1998.

Verby Law Office, Sandpoint, Coeur d'Alene, for appellant. Steven C. Verby argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondents. John W. Barrett argued.

TROUT, Chief Justice.

This is an appeal from a declaratory ruling by the Industrial Commission of the State of Idaho finding that I.C. § 72–413, a Worker's Compensation death benefits statute, as it existed on March 28, 1985, was not subject to an annual adjustment in the average weekly state wage. We affirm the Industrial Commission's ruling.

# I.

## BACKGROUND

Marc Antoine Vincent (Marc) died on March 28, 1985 when he stepped on an unanchored plank at his job site and fell 180 feet to his death. At the time of his death Marc was employed by the Respondent, Dynatec Mining Corporation (Dynatec). Marc left behind his pregnant wife Tammie Vincent (Tammie) and two children, who at the time of his death were approximately six and four years old. Tammie gave birth to a third child three months after the accident.

After Marc's death, Appellant–Claimant Tammie properly filed a notice of death of employee and claim for compensation. Dy-

natec's surety, Defendant–Respondent Argonaut Insurance Company (Argonaut), submitted a summary and award to the Industrial Commission which set forth the award of payments to be paid on the death claim. The award was approved by the Industrial Commission. Pursuant to I.C. § 72–413, Tammie was given sixty percent of the average weekly state wage (forty-five percent to the dependant widow plus an additional five percent for each child). The average weekly state wage in 1985 was $289.00 and Argonaut made payments of $173.40 for the statutory maximum of 500 weeks. The average weekly wage used to compute the benefits did not increase annually for the entire 500 weeks during which payments were due.

Tammie filed a Worker's Compensation Complaint in June of 1995 asserting that death benefits paid should have escalated annually. Argonaut then petitioned the Industrial Commission for a declaratory ruling requesting that the Industrial Commission determine the construction of I.C. § 72–413 as it existed at the time of Marc's death. The Industrial Commission held that death benefits under I.C. § 72–413 are not subject to the escalator provision of I.C. § 72–409 and granted a declaratory ruling in favor of Argonaut.

## II.

### THE INDUSTRIAL COMMISSION CORRECTLY INTERPRETED I.C. § 72–413 AS IT EXISTED ON MARCH 28, 1985.

#### A. Standard of Review

 In any review of a decision by the Industrial Commission the Court exercises free review over questions of law. IDAHO CONST. art. V, § 9; *Ogden v. Thompson,* 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). In making its determination, the Court construes liberally the worker's compensation law in favor of the claimant. *Ogden,* 128 Idaho at 88, 910 P.2d at 760; *Kinney v. Tupperware Co.,* 117 Idaho 765, 769, 792 P.2d 330, 334 (1990). The humane purposes which it serves leave no room for narrow technical constructions. *Ogden,* 128 Idaho at 88, 910 P.2d at 760.

#### B. The Court's reasoning in *Carey v. Clearwater County Road Department* is controlling.

On appeal, Tammie asserts that the plain language of I.C. § 72–413[1] can logically be interpreted to allow for annual adjustments in the average state wage. Tammie argues that because the measurement of the weekly state wage as defined in I.C. § 72–409[2] was to be recalculated yearly, then that new weekly wage should likewise be applied to the calculation of Tammie's benefits each year.

This Court addressed essentially the same question in *Carey v. Clearwater County Road Department,* 107 Idaho 109, 686 P.2d 54 (1984). In *Carey,* the issue presented was whether I.C. § 72–428 provided for fixed or adjustable payments to an employee for the portion of his total odd-lot disability attributable to the employer which was treated as permanent partial disability. Idaho Code § 72–428 stated in pertinent part, "[a]n employee who suffers a permanent disability

1. Idaho Code § 72–413 as it existed at the time of Marc's death stated in pertinent part:
 If death results from the injury or occupational disease within four (4) years, the employer shall pay to or for the benefit of the following particular classes of dependents' weekly income benefits equal to the following percentages of the average weekly state wage as defined in section 72–409, Idaho Code.
 I.C. § 72–413 (1989), *amended by* I.C. § 72–413 (Supp.1998).

2. Idaho Code § 72–409 stated in pertinent part:
 (2) For the purpose of this law the average weekly wage in the state shall be determined by the commission as follows: on or before June 1 of each year, the total wages reported on contribution reports to the department of employment for the preceding calendar year shall be divided by the average monthly number of insured workers determined by dividing the total insured workers reported for the preceding year by twelve (12). The average annual wage thus obtained shall be divided by fifty-two (52) and the average weekly state wage thus determined rounded to the nearest dollar. The average weekly state wage as so determined shall be applicable for the calendar year commencing January 1 following the June 1 determination.
 I.C. § 72–409 (1989), *amended by* I.C. § 72–409 (Supp.1998).

less than total and permanent shall ... be paid income benefits for such permanent disability in an amount equal to fifty-five percent (55%) of the *average weekly state wage* ...." *Id.* at 116, 686 P.2d at 61 (alteration in original). In analyzing I.C. § 72–429, a companion statute to I.C. § 72–428, the Court noted that I.C. § 72–429 "refers back to I.C. § 72–409 and presumably to I.C. § 72–409(2) for the calculation of benefits." *Id.* The Court then observed that I.C. § 72–429 did not specify whether the "currently applicable average weekly state wage" or the "average weekly state wage as of the time of the accident" should be used in calculating benefits for permanent partial disability. *Id.* In contrast, I.C. § 72–409 contained an escalator provision for the average weekly state wage in cases of permanent total disability. Additionally, I.C. § 72–408 set forth the income benefits for an injured employee during recovery measured in terms of "currently applicable average weekly state wage" for those sections addressing total disability, while partial disability benefits during the period of recovery were measured according to the decrease in the specified worker's wage earning capacity. *Id.* After examining the different language of the statutes, we held that "the legislature intended benefits for partial permanent disability to be fixed and quantifiable." *Id.* We also noted that partial permanent disability benefits were collectible for a maximum of 500 weeks and were thus not intended to be whole-life benefits. *Id.*

■ We find that the present action is controlled by our reasoning in *Carey.* Idaho

Code § 72–413 as it existed in 1985 did not indicate whether the "currently applicable average weekly state wage" or the "average weekly state wage at the time of the accident" applied. *See* I.C. § 72–413 (1989), *amended by* I.C. § 72–409 (Supp.1998). However, other statutes in the Worker's Compensation title, namely those discussed in *Carey,* clearly defined whether an adjustment was intended. The statutes discussed in *Carey* were in effect at the time of Marc's death. Additionally, I.C. § 72–413 as it existed in 1985 was limited to a 500 week maximum, the same limit placed on the statutes in question in *Carey.* I.C. § 72–412 (1989). *See Carey,* 107 Idaho at 116, 686 P.2d at 61. Thus, like the statutes discussed in *Carey,* Idaho Code § 72–413 as it existed on March 28, 1985 was intended to be fixed and quantifiable and did not allow for annual adjustments in the weekly state wage.[3]

## III.

### CONCLUSION

Idaho Code § 72–413 as it existed on March 28, 1985 did not allow for annual adjustments in the weekly state wage. Accordingly, we affirm the Industrial Commission's declaratory ruling in favor of Dynatec. We award costs to Respondent Argonaut.

Justices JOHNSON, SILAK, SCHROEDER and WALTERS, concur.

---

3. We note that I.C. § 72–413 was amended in 1991 to allow for annual adjustments in the weekly state wage. The amended version of I.C. § 72–413 as well as the current version of I.C. § 72–413 state in pertinent part:

The benefits payable hereunder shall be subject to annual adjustment as provided in section 72–409(2), Idaho Code. The annual adjustment provided herein shall not apply to benefits for an injury or occupational disease resulting in death if the accident causing the injury or the manifestation of the occupational disease occurred prior to July 1, 1991.

1991 Idaho Sess. Laws ch. 207, 490; I.C. § 72–413 (Supp.1998).

Under our rules of construction, the 1991 amendment further supports our decision in this case. When the legislature amends a statute it is deemed, absent an express indication to the con-

trary, to be indicative of changed legislative intent. *Nebeker v. Piper Aircraft Corp.,* 113 Idaho 609, 614, 747 P.2d 18, 23 (1987). Also, when a statute is amended it is presumed that the legislature intended the statute to have a meaning different from the meaning accorded the statute before amendment. *Miller v. State,* 110 Idaho 298, 299, 715 P.2d 968, 969 (1986). Lastly, we do not presume that the legislature performed an idle act by enacting a meaningless provision. *Brown v. Caldwell Sch. Dist. No. 132,* 127 Idaho 112, 117, 898 P.2d 43, 48 (1995). According to our rules of construction, we can assume that the annual adjustment was not intended under the statute as it existed at the time of Marc's death. Additionally, we will not presume that the legislature unnecessarily amended the statute by interpreting I.C. § 42–413 to allow for the annual adjustment prior to July 1, 1991.