14 P.3d 372

**Gerald R. MULDER, Claimant–Respondent,**

v.

**LIBERTY NORTHWEST INSURANCE COMPANY, Employer, and Idaho State Insurance Fund, Surety, Defendants–Appellants.**

No. 25576.

Supreme Court of Idaho,
Boise, March 2000 Term.

Sept. 29, 2000.

Rehearing Denied Dec. 11, 2000.

Wilcox Law Offices, Boise, for appellants. Todd J. Wilcox argued.

Bradford S. Eidam, Boise, for respondent.

SILAK, Justice.

## NATURE OF THE CASE

This is an appeal from an Idaho Industrial Commission (the Commission) order granting claimant medical benefits because of work-related bilateral carpal tunnel syndrome. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background.

Gerald Mulder (Mulder) was employed by appellant, Liberty Northwest Insurance Company (Liberty) as a senior loss prevention consultant. Liberty is a worker's compensation surety and as senior loss prevention consultant, Mulder traveled to Liberty's various insured customers to assist in safety training programs and to help minimize worker's compensation loss.

Liberty's office was located in Boise, and Mulder's responsibility for serving the Idaho Falls, Pocatello and Blackfoot regions required him to drive his automobile to these locations on a regular basis. Mulder remained in the Boise office during those periods he was not traveling.

During his trips, Mulder would meet with up to four clients per day, and his duties required him to hand-write from one and a half to four pages of notes per client. When he was at the office, Mulder's duties included use of a computer keyboard.

In 1994, Mulder began to notice symptoms of carpal tunnel syndrome. In May 1996, Mulder was diagnosed by his physician, Dr. William Lenzi (Dr. Lenzi) as having bilateral carpal tunnel syndrome. Though the carpal tunnel syndrome was significantly worse in Mulder's left hand than in his right, Dr. Lenzi recommended surgery for both hands. Mulder notified Liberty who filed the proper

worker's compensation forms. Mulder did not suffer any time loss from his position at Liberty because of his condition.

In June 1996, Mulder resigned his employment with Liberty and began employment with Fred A. Moreton & Co. (Moreton). Mulder's duties with Moreton involved substantially less driving, handwriting, and virtually no use of a computer keyboard.

In December 1996, Dr. Lenzi informed Mulder that his carpal tunnel situation was static, meaning that it would not get any better or worse without surgery. Mulder subsequently underwent surgery for a carpal tunnel release on his left hand.

### B. Procedural Background.

Mulder filed a worker's compensation claim in January 1997 seeking compensation for medical expenses associated with his bilateral carpal tunnel syndrome. Liberty filed an answer to the complaint.

The parties conducted pre-hearing depositions of their respective expert witnesses on October 14 and 21, 1997. The Commission conducted a hearing on October 29, 1997 where live testimony was taken from the parties' respective expert witnesses.

In December 1997, the Commission issued its findings of fact and conclusions of law ruling that Mulder was entitled to worker's compensation benefits for medical expenses associated with his left carpal tunnel release but denied benefits for a future right carpal tunnel release. The Commission viewed each as a separate occupational disease and denied benefits for the right hand due to lack of total incapacitation.

Mulder moved for reconsideration of the Commission's determination that his bilateral carpal tunnel syndrome constituted two separate occupational diseases.

In April 1998, the Commission issued its findings of fact and conclusions of law ruling that Mulder's bilateral carpal tunnel syndrome constituted a single, compensable occupational disease but otherwise affirmed its early ruling.

In May 1999, Liberty filed a notice of appeal.

## II.

## ISSUES ON APPEAL

A. Whether the Commission erred in ruling that Mulder's occupational disease resulted from exposure to hazards "characteristic of and peculiar to his trade or occupation."

B. Whether the Commission erred in ruling that Mulder was entitled to medical benefits.

## III.

## STANDARD OF REVIEW

■ In reviewing an appeal from the Industrial Commission, this Court will uphold the Commission's findings if they are supported by substantial and competent evidence, but will freely review issues of law. *See Phinney v. Shoshone Medical Center,* 131 Idaho 529, 531, 960 P.2d 1258, 1260 (1998). *See also, Tonahill v. LeGrand Johnson Const. Co.,* 131 Idaho 737, 739, 963 P.2d 1174, 1176 (1998); *Mancilla v. Greg,* 131 Idaho 685, 687 963 P.2d 368, 370 (1998).

In *Idaho State Insurance Fund v. Hunnicutt,* 110 Idaho 257, 715 P.2d 927 (1985), this Court described the appropriate test for substantial and competent evidence for the purposes of judicial review of an administrative agency's action as follows:

> The "substantial evidence rule" is said to be a "middle position" which precludes a *de novo* hearing but which nonetheless requires a serious review which goes beyond the mere ascertainment of procedural regularity. Such a review requires more than a mere "scintilla" of evidence in support of the agency's determination, though "something less than the weight of the evidence." "Put simply," we wrote, "the substantial evidence rule requires a court to determine 'whether [the agency's] findings of fact are reasonable.'"

110 Idaho at 260, 715 P.2d at 930 (citations omitted).

## IV.

## ANALYSIS

### A. Substantial Evidence Exists To Support The Commission's Finding That Mulder's Carpal Tunnel Syndrome Constituted An Occupational Disease.

■ Liberty asserts that the Commission erred when it found that Mulder's carpel tunnel syndrome was an "occupational disease" because Mulder offered no proof that his carpal tunnel syndrome was peculiar to his job at Liberty, or that he distinguished his particular job requirements from the general run of occupations.

Idaho worker's compensation law provides benefits to persons suffering injury or disablement due to a work-related accident or occupational disease. *See* I.C. §§ 72–102(17)(b), (21)(a); 72–432; 72–437. An "occupational disease" as defined by the worker's compensation law is:

> [A] disease due to the nature of an employment in which the hazards of such disease actually exist, *are characteristic of, and peculiar to the trade, occupation, process, or employment,* but shall not include psychological injuries, disorders or conditions unless the conditions set forth in section 72–451, Idaho Code, are met.

I.C. § 72–102(21)(a) (emphasis added).

There is no dispute among the parties that Mulder suffered from bilateral carpal tunnel syndrome. This Court has previously determined that carpal tunnel syndrome may constitute an occupational disease within the meaning of the worker's compensation law. *See Blang v. Liberty Northwest Ins. Corp.,* 125 Idaho 275, 277, 869 P.2d 1370, 1372 (1994); *Kinney v. Tupperware Co.,* 117 Idaho 765, 768, 792 P.2d 330, 333 (1990).

■ The Commission has wide discretion in making factual determinations regarding worker's compensation claims. However, before this Court can appropriately determine whether the Commission's findings were supported by substantial evidence, we must determine whether the correct legal standard governing available discretionary alternatives was applied. *See Vernon v.*

*Omark Industries,* 113 Idaho 358, 360, 744 P.2d 86, 88 (1987).

This Court has previously discussed how the statutory phrase "characteristic of, and peculiar to" is to be construed. In *Bowman v. Twin Falls Const. Co., Inc.,* 99 Idaho 312, 581 P.2d 770 (1978), we adopted the construction given by the Supreme Court of Michigan in holding that:

> The phrase, "peculiar to the occupation," is not here used in the sense that the disease must be one which originates *exclusively* from the particular kind of employment in which the employee is engaged, but rather in the sense that the conditions of that employment must result in a hazard which distinguishes it in character from the general run of occupations.

99 Idaho at 323, 581 P.2d at 781, *overruled on other grounds, DeMain v. Bruce McLaughlin Logging,* 132 Idaho 782, 979 P.2d 655 (1999) (emphasis in original).

Liberty asserts that in the context of carpal tunnel syndrome, *Bowman* does not provide adequate guidance to determine whether the disease is caused by exposure to hazards which are characteristic of, and peculiar to the claimant's trade or occupation. Specifically, Liberty argues that applying the *Bowman* test is inappropriate in carpal tunnel syndrome claims because such claims involve exposure to hazards which are common to the activities of day to day living, and are indistinguishable from the vast majority of other occupations. Liberty asks this Court to take judicial notice of the fact that virtually all employees drive, write, and keyboard.

While it is noted that a great number of occupations require an employee to drive, write or use a computer keyboard, an equally great number do not. It is the rare case that manufacturing, assembly line or construction employees are called upon as a requisite of their employment to operate an automobile, take extensive notes or utilize a computer keyboard. Moreover, the vast number of occupations which may require one or more of these activities likely do not require all of them. Therefore, we disagree with Liberty's assertion and hold that the test set out in *Bowman* is properly applied to worker's

compensation claims involving carpal tunnel syndrome.

■ Applying the test from *Bowman*, the Commission found the hazards that Mulder was exposed to during his work at Liberty could be distinguished from the general run of occupations. The Commission determined that exposure to long periods of repetitive upper extremity motions, including writing, keyboarding, and gripping of a steering wheel are not characteristic of all occupations. The Commission based its factual determination, in part, on the medical testimony of Dr. Lenzi and upon the description of the job duties peculiar to Mulder's position with Liberty. The Commission determined that those duties necessitated driving, handwriting and keyboarding. Though Liberty presented conflicting testimony from its expert, Dr. Richard Knoebel (Dr. Knoebel), this Court will defer to the Commission's findings as to the credibility of conflicting medical experts. *See e.g., Pomerinke v. Excel Trucking Transport, Inc.,* 124 Idaho 301, 305, 859 P.2d 337, 341 (1993). This evidence is substantial and competent, and will not be disturbed on appeal.

**B. Though The Commission Erred In Its Analysis Of Whether Mulder Was Entitled To Medical And Surgical Benefits, Its Result Was Proper And Will Not Be Disturbed On Appeal.**

■ The Commission ruled that Mulder was entitled to medical benefits for the surgery performed on his left wrist. The Commission based its award of medical benefits by first finding that Mulder was totally disabled pursuant to I.C. § 72–437, and then determining that his medical benefits were reasonable pursuant to I.C. § 72–432(1).

Liberty asserts that the Commission erred when it awarded medical benefits to Mulder because no evidence was presented indicating that he was totally disabled prior to his surgery. Liberty asserts that worker's compensation benefits cannot be awarded in an occupational disease case until the claimant first establishes that he has been totally incapacitated from performing his work in the last occupation in which he was injuriously ex-

posed to the hazards of the disease. Liberty argues that because medical and surgical benefits are compensation, the surgery itself is not compensable absent proof of disablement *prior* to surgery.

This Court has previously held that I.C. § 72–437 describes the circumstances in which a claimant with an occupational disease is entitled to worker's compensation benefits. *See e.g., Tupper v. State Farm Ins.,* 131 Idaho 724, 729, 963 P.2d 1161, 1166 (1998); *Reyes v. Kit Mfg. Co.,* 131 Idaho 239, 240, 953 P.2d 989, 990 (1998); *Kitchen v. Tidyman Foods,* 130 Idaho 1, 2, 936 P.2d 199, 200 (1997); *Blang v. Liberty Northwest Ins. Corp.,* 125 Idaho 275, 277, 869 P.2d 1370, 1372 (1994). However, these cases have applied I.C. § 72–437 alone to all claims, regardless of the nature of the compensation sought. Thus, claims for medical benefits as well as disability income benefits have been analyzed solely pursuant to this section.

A closer reading of the Idaho worker's compensation law reveals that analysis of all forms of compensation for occupational diseases under I.C. § 72–437 is inappropriate where the applicable statutory provisions, when read as a whole, provide that medical benefits for occupational diseases are to be treated differently from disability income benefits.

I.C. § 72–437 is entitled "Occupational diseases—Right to compensation" and states:

> When an employee of an employer suffers an occupational disease and is thereby disabled from performing his work in the last occupation in which he was injuriously exposed to the hazards of such disease, or dies as a result of such disease, and the disease was due to the nature of an occupation or process in which he was employed within the period previous to his disablement as hereinafter limited, the employee, or, in case of his death, his dependents shall be entitled to compensation.

I.C. § 72–737. "Disabled" means the event of an employee's becoming actually and totally incapacitated because of an occupational disease from performing his work in the last occupation in which injuriously exposed to the hazards of such disease. I.C. § 72–

102(21)(c). "Compensation" means any or all of the income benefits and the medical and related benefits and medical services. I.C. § 72–102(6). Read in conjunction, these sections appear to indicate that a claimant with an occupational disease must establish that he or she has suffered total disability before being entitled to receive benefits for medical services. However, the Idaho worker's compensation law has a separate provision dealing specifically with medical and surgical benefits. I.C. § 72–432 is entitled "Medical services, appliances and supplies" and states:

> The employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicines, crutches and apparatus, as may be reasonably required by the employee's physician or needed immediately after injury or manifestation of an occupational disease, and for a reasonable time thereafter. If the employer fails to provide the same, the injured employee may do so at the expense of the employer.

I.C. § 72–432(1).

I.C. § 72–437 requires compensation by an employer to employees who suffer total disability due to an occupational disease. This compensation includes both loss of income and medical services. See I.C. §§ 72–437, 72–102(6). On the other hand, I.C. § 72–432(1) mandates that an employer provide the medical or surgical treatment reasonably required by the employee's physician after there has been manifestation of an occupational disease. I.C. § 72–437 requires a showing of total disability, while I.C. § 72–432(1) requires only a showing that medical or surgical treatment is reasonably necessary.

Though the Commission relied on I.C. § 72–437 in determining whether Mulder was entitled to benefits for his condition, this Court has the ultimate responsibility to construe legislative language. See J.R. Simplot Co., Inc. v. Idaho State Tax Com'n, 120 Idaho 849, 820 P.2d 1206 (1991); George W. Watkins Family v. Messenger, 118 Idaho 537, 797 P.2d 1385 (1990). Our objective in interpreting a statute is to derive the intent of the legislature. See Payette River Proper-

ty Owners Ass'n v. Board of Com'rs of Valley County, 132 Idaho 551, 976 P.2d 477 (1999). This Court may examine the language used, the reasonableness of the proposed interpretations and the policy behind the statute, and will give effect to the purpose and intent of the legislature based on the whole act and every word therein, while lending substance and meaning to the provisions. See Baker v. Sullivan, 132 Idaho 746, 979 P.2d 619 (1999); State v. Burnight, 132 Idaho 654, 978 P.2d 214 (1999); Hoskins v. Howard, 132 Idaho 311, 971 P.2d 1135 (1998); State v. Hagerman Water Right Owners, Inc., 130 Idaho 727, 947 P.2d 400 (1997); Blome v. Truska, 130 Idaho 669, 946 P.2d 631 (1997).

A basic tenet of statutory construction is that the more specific statute or section addressing the issue controls over the statute that is more general. See Tuttle v. Wayment Farms, Inc., 131 Idaho 105, 952 P.2d 1241 (1998); Paterson v. State, 128 Idaho 494, 915 P.2d 724 (1996); City of Sandpoint v. Sandpoint Independent Highway Dist., 126 Idaho 145, 879 P.2d 1078 (1994). Thus, the more general statute should not be interpreted as encompassing an area already covered by one which is more specific. See State v. Hagerman Water Right Owners, Inc., 130 Idaho 736, 947 P.2d 409 (1997). Additionally, when choosing between alternative constructions of a statute, this Court presumes that the statute was not enacted to work a hardship or to effect an oppressive result. See Higginson v. Westergard, 100 Idaho 687, 604 P.2d 51 (1979). Therefore, this Court will construe liberally the workers' compensation law in favor of the claimant. The humane purposes, which the law serves, leave no room for a narrow, technical construction. See Vincent v. Dynatec Min. Corp., 132 Idaho 200, 969 P.2d 249 (1998); Ogden v. Thompson, 128 Idaho 87, 910 P.2d 759 (1996).

Review of these two statutory provisions indicates that I.C. § 72–432(1) is more specific with respect to medical and surgical coverage for occupational diseases than is I.C. § 72–437. The scope of the benefits addressed within I.C. § 72–432(1) is more narrowly focused than that of I.C. § 72–437. The "compensation" contemplated under I.C.

§ 72–437 includes income benefits, medical and related benefits, and medical services while I.C. § 72–432(1) restricts its focus to medical services only.

 Given the statutory scheme and this Court's history of liberally construing the workers' compensation law in favor of the claimant, it is clear that I.C. § 72–432(1) was intended to address medical and surgical benefits for claimants manifesting an occupational disease, while I.C. § 72–437 was intended to address a claimant's entitlement to benefits for lost income and other compensation. It necessarily follows that where employment causes a claimant to manifest an occupational disease, the claimant is entitled to the reasonable medical services and benefits reasonably required to treat such disease. However, where an employee seeks to claim lost income as a result of his occupational disease, the claimant must show that his or her ability to perform job-related duties has been adversely affected to the point of the employee's disablement. This construction better serves the policy behind the worker's compensation law than do constructions requiring a showing of total disability.

Therefore, we hold that under Idaho worker's compensation law, where a claimant seeks compensation for an occupational disease, benefits for medical services, appliances and supplies are to be determined according to I.C. § 72–432. All other forms of compensation claimed for an occupational disease are to be determined pursuant to I.C. § 72–437.

Applying the analysis discussed above, the Commission was correct in finding Mulder was entitled to reasonable medical benefits related to his occupational disease. The Commission found that Mulder suffered from an occupational disease. Dr. Lenzi testified that surgery was required to treat the carpal tunnel syndrome in Mulder's left hand. For the purposes of I.C. § 72–432(1), medical treatment is reasonable if the employee's physician requires the treatment and it is for the physician to decide whether the treatment is required. *See Sprague v. Caldwell Trans. Inc.*, 116 Idaho 720, 779 P.2d 395 (1989). The Commission found that under I.C. § 72–432, the surgery was reasonable.

This finding is supported by substantial evidence. Since Mulder has not sought any other type of compensation, the Court need not decide whether Mulder became totally incapacitated by his disease.

Accordingly, we hold that the Commission correctly ordered that Mulder was entitled to reasonable medical benefits. *See J.R. Simplot Co., Inc. v. Idaho State Tax Com'n*, 120 Idaho 849, 820 P.2d 1206 (1991); *State, Dept. of Health and Welfare ex rel. Gage v. Engelbert*, 114 Idaho 89, 753 P.2d 825 (1988).

**C. Costs And Attorney Fees.**

Neither party has claimed attorney fees on appeal. Costs are awarded to Mulder as the prevailing party. *See* I.C. § 12–107.

### V.

### CONCLUSION

Substantial and competent evidence supports the Commission's finding that Mulder's carpal tunnel syndrome constitutes an occupational disease under the Idaho worker's compensation law. Mulder was not required to show total disability prior to his surgery in order to recover medical benefits for such surgery. Costs are awarded on appeal to respondent.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and KIDWELL concur.