25 P.3d 105

**Darlene A. EWING, Claimant–Appellant,**

v.

**John H. HOLTON, D.M.D., Employer, and Idaho State Insurance Fund, Surety, Defendants–Respondents.**

No. 26113.

Supreme Court of Idaho, Boise, February 2001 Term.

May 22, 2001.

Seiniger Law Offices, P.A., Boise, for appellant. Breck Seiniger argued.

Hon. Alan G. Lance, Attorney General, Boise, for respondents. Bridget A. Vaughan argued.

KIDWELL, Justice.

This appeal arises from a decision by the Industrial Commission, denying Claimant Ewing's worker's compensation claim because she failed to meet the time requirements set forth in Idaho Code section 72–706(1). We affirm.

## I.

## FACTS AND PROCEDURAL BACKGROUND

The following statement of facts is a summary of the stipulation of facts entered into by the parties.

Claimant Darlene Ewing worked for John H. Holton, D.M.D., as a dental hygienist from July of 1990 until October 24, 1997. On October 27, 1997, Ewing sought treatment for "upper extremity complaints." She was seen by nurse practitioner Greg Galloway, who diagnosed "carpal tunnel syndrome, right worse than left; low back pain."

On October 29, 1997, Ewing saw Betty F. Hall, M.D., for nerve conduction velocity testing. The results of Dr. Hall's tests indicated normal. Ewing next saw Charles Schneider, M.D., on November 17, 1997, on a referral from Mr. Galloway. Dr. Schneider determined that Ewing had developed upper extremity pain over the past several months. Dr. Schneider diagnosed "soft tissue inflammation involving the extensor musculature

right forearm, mild ulnar neuropathy, right and left elbows [sic], and possible low grade carpal tunnel syndrome."

On November 18, 1997, Idaho State Insurance Fund received a notice of claim from Ewing, which listed October 27, 1997 as the date of injury. The notice listed John Holton, D.M.D., as the employer and claimed that while in Holton's employ, Ewing had "developed bilateral carpal tunnel syndrome-tendonitis as result of repetitive motion" she had to perform as a dental hygienist. The Industrial Commission assigned the claim number 97–037311, and listed the "Date of Injury" as October 27, 1997.

Kathy R. Bennett, D.C., began treating Ewing for "acute right elbow pain and moderate left elbow pain, and intermittent numbness in the 4th and 5th digits," on November 25, 1997.

Ewing returned to Dr. Betty Hall on January 29, 1998, for a complete neurologic evaluation. Ewing described approximately seven years of intermittent pain in her right hand that occurred when she would perform dental hygiene work on more than two consecutive patients. Ewing further indicated that in early fall of 1997, she developed an aching in both elbows and an "electrical sensation from the elbows to the hands." In addition to x-rays, Dr. Hall recommended blood screening for "sed rate, ANA, Rheumatoid factor, CBC, Thyroid, and Vitamin B 12." Dr. Hall suggested that Ewing be tested for "fibromyalgia" if the blood screening was negative. Following the blood work, the results were negative.

The State Insurance Fund arranged for Ewing to have an independent medical evaluation with William D. Lenzi, M.D., on March 3, 1998. At that time, Ewing complained of "aches and pains in the elbow, arm and hand, especially the palmar cutaneous area of the hand, radiating pain down the forearm when the radial surface of the elbow is touched, an inability to tilt her head to the left side, and pain on the olecranon area of the left elbow with radiation down into the hand."

Following the examination, Dr. Lenzi reported to the State Insurance Fund that he found "no neurological or muscular findings to diagnose this patient's problems." However, Dr. Lenzi agreed with Dr. Hall's suggestion that Ewing could be suffering from fibromyalgia. Although Dr. Lenzi suggested a full "work-up" by a rheumatologist, the State Insurance Fund never made arrangements for the work-up.

In a letter dated March 12, 1998, the State Insurance Fund denied Ewing benefits for her injuries arising from the October 27, 1997 manifestation date because it could not be determined whether her condition arose from an industrial accident or that it was an occupational disease. At the time of this denial, no doctor had conclusively diagnosed Ewing's condition, with the exception of possibly fibromyalgia.

Nine months later, on December 7, 1998, Ewing began treatment with William A. Levinger, M.D. Ewing had complained of a one and one-half year history of pain that began "as an aching pain in the elbows, primarily the right elbow, with numbness in the fourth and fifth digits in the hand." Dr. Levinger diagnosed reflex sympathetic dystrophy (RSD). This was the first time Ewing had been diagnosed with RSD. Dr. Levinger concluded that Ewing should be admitted to a "Pain Center where continuous cervical epidural infusions could be performed."

On January 6, 1999, Ewing's attorney filed a "Workers' Compensation First Report of Injury or Illness" along with a worker's compensation complaint listing December 7, 1998, as the date of injury. The complaint sought benefits for RSD developed over time using various dental tools. The Industrial Commission assigned this complaint a new case number and listed December 7, 1998, as the date of injury.

The State Insurance Fund filed an answer on January 27, 1999, denying that Ewing suffered an industrial accident or an occupational disease. Ewing has not worked in any capacity since October 24, 1997.

On June 1, 1999, Industrial Commission Referee Robert Barclay conducted a telephonic conference with the parties. The parties agreed to waive a formal hearing, and on September 9, 1999, the referee entered the

parties' stipulated findings of fact, along with his conclusion of law and recommendation.

Because Ewing's two complaints arose from the same set of facts, i.e. her employment as a dental hygienist for Dr. Holton, the referee stated the issue to be determined as whether Ewing had "complied with the time limitation for making and filing with the Commission an application requesting a hearing as set forth in Idaho Code § 72–706(1)."

In her memorandum, Ewing argued that the time limitation for the filing of a complaint did not apply because she was not aware of the condition until December 7, 1998. The defendants, however, contended that she was aware of the condition from which she was suffering in October of 1997 when she filed her claim with the State Insurance Fund.

In his analysis, the referee determined that Ewing had failed to file a request for hearing within the one-year limitation set forth in the Idaho Code. The referee found that Ewing had been diagnosed with bilateral carpal tunnel syndrome on October 29, 1997, under the same ailments and infirmities with which she was diagnosed as having RSD on December 7, 1998. Therefore, the referee recommended that Ewing's claim should be denied because she had not complied with the one-year limitation for filing her complaint.

In an order filed September 9, 1999, the Industrial Commission adopted the recommendation of the referee. On November 30, 1999, the Commission denied Ewing's motion for reconsideration. Ewing filed her notice of appeal on December 17, 1999.

## II.

## STANDARD OF REVIEW

■ When this Court reviews a decision from the Industrial Commission, it exercises free review over questions of law but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Ogden v. Thompson*, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996). Substantial and competent evi-

dence is "relevant evidence which a reasonable mind might accept to support a conclusion." *Boise Orthopedic Clinic v. Idaho State Ins. Fund (In re Wilson)*, 128 Idaho 161, 164, 911 P.2d 754, 757 (1996).

## III.

## ANALYSIS

A. **There Is Substantial And Competent Evidence To Support The Industrial Commission's Determination That Ewing Failed To Meet The Requirements Of I.C. § 72–706(1) By Failing To File A Request For Hearing Within One Year Of The Date Of Making Her Claim For Benefits.**

■ The Industrial Commission determined that Ewing failed to meet the time requirements for filing a notice of hearing as provided for in I.C. § 72–706(1). Claimant Ewing, however, argues that the case should be controlled by the time limitation for I.C. § 72–448, rather than the limitation in I.C. § 72–706(1).

Idaho Code section 72–448 provides in relevant part:

(1) Unless written notice of the manifestation of an occupational disease is given to the employer within sixty (60) days after its first manifestation, or to the industrial commission if the employer cannot be reasonably located within ninety (90) days after the first manifestation, and unless claim for worker's compensation benefits for an occupational disease is filed with the industrial commission within one (1) year after the first manifestation, all rights of the employee to worker's compensation due to the occupational disease shall be forever barred.

I.C. § 72–448(1).

The relevant section of Idaho Code 72–706 provides:

(1) When no compensation paid. When a claim for compensation has been made and no compensation has been paid thereon, the claimant, unless misled to his prejudice by the employer or surety, shall have one (1) year from the date of making claim within which to make and file with the

commission an application requesting a hearing and an award under such claim. I.C. § 72–706(1).

As explained by this Court in *Bainbridge v. Boise Cascade Plywood Mill,* 111 Idaho 79, 721 P.2d 179 (1986), these two statutes provide two separate time limitations on worker's compensation actions. *Id.* The Court noted, "The worker's compensation law as enacted establishes two sets of statutes of limitations, those applicable to the filing of *claims* for disability (I.C. §§ 72–448 and 72–701) and those dealing with filing *applications for hearing* before the Industrial Commission (I.C. § 72–706)." *Id.* at 83, 721 P.2d at 183.

In the present case, Ewing filed a *claim* for benefits with the State Insurance Fund on November 18, 1997, and her application for hearing (complaint) on January 6, 1999. From the plain wording of the statutes, it is clear that Ewing did indeed fail to timely file her application for a hearing because she did not file an application for a hearing within one year of making her claim for benefits.

Ewing counters that she could not have filed her application for a hearing until Dr. Levinger had properly diagnosed her on December 7, 1998. In support of her argument, Ewing cites to *Boyd v. Potlatch Corporation,* 117 Idaho 960, 793 P.2d 192 (1990), for the proposition that an industrial disease is not manifest until it has been clearly identified by medical professionals.

The facts of *Boyd* indicate that in the fall of 1984 Boyd began working for Potlatch in its lumber production facility. *Id.* Soon thereafter, Boyd sought medical attention from an allergist because his asthma was becoming worse. The allergist suspected that cedar dust at the facility was the cause of Boyd's respiratory problems. *Id.* On February 26, 1985, the allergist "advised Boyd to seek employment which did not involve contact with cedar dust." *Id.* On June 10, 1985, Boyd tested positive on a cedar dust challenge test.

■ Boyd filed a notice of claim on March 25, 1986, and an application for hearing on December 29, 1986. Potlatch and its surety denied the claims and argued that Boyd had not filed timely notices—since he knew of the injury as early as October 1984. *Id.* at 961, 793 P.2d at 193. In concluding that Boyd's injuries were not manifest until the June 10, 1985 test, this Court held that "a disease is not manifest until the employee has been informed by competent medical authority of the nature and work-related cause of the disease ...." *Id.* The Court further held "that *for purposes of the notice and filing requirements* of I.C. § 72–448, a disease is not manifest until its cause has been clearly identified by competent medical authority as related to the employee's work and that information has been communicated to the employee." *Id.* (Emphasis in original.)

Ewing claims that her case is the same as Boyd's, in that her ailment was not manifest until Dr. Levinger informed her, on December 7, 1998, that she was suffering from RSD. Ewing's reliance on *Boyd,* however, is misplaced. In *Boyd* the claimant was not able to identify the cause of his respiratory condition, that is he was not able to attribute it to a work-related activity. However, in both of her claims, Ewing stated that a repetitive motion she performed as part of her employment caused her injuries. Thus, Ewing was aware, in November of 1997, that she was suffering an ailment and that the *cause* of the ailment was work-related.

■ Ewing asserts that this Court should not consider her first claim for benefits, and instead treat her second claim as totally different. The stipulation of facts clearly indicates that Ewing filed her first claim for benefits in November of 1997. Ewing based this claim on her belief that she "had developed bilateral carpal tunnel syndrome–tendinitis as a result of repetitive motion the Claimant performed as part of her employment duties as a dental hygienist." Then, some fifteen months later, Ewing filed her second claim for benefits on the basis that she was suffering from RSD, which was "developed over time using various dental tools." Thus, Ewing based both her first and second claims for benefits on the same set of facts.

Finally, Ewing argues that this conclusion would force her, and others, into the position of having to file an application for hearing

prior to being fully informed as to the nature and extent of the disease or injury. The record does not indicate any reason why Ewing had to file her notice of claim prior to being more fully informed of her injury. Once the notice of claim has been filed, I.C. § 72–706 requires that an application for injury be filed within one-year of that date where benefits were not paid. Unfortunately, this mandatory language of the worker's compensation statute was not followed. Therefore, we affirm the decision of the Industrial Commission.

## IV.

## CONCLUSION

Claimant Ewing's claim is barred because she failed to meet the time requirements of I.C. § 72–706. Costs are awarded to respondents; no attorney fees are awarded on appeal.

Chief Justice TROUT, Justices SCHROEDER, WALTERS and EISMANN concur.